42901.    McBERRY et al. v. IVIE.

ARGUED JUNE 12, 1967—DECIDED NOVEMBER 22, 1967— REHEARING DENIED DECEMBER 8, 1967.

*Powell, Goldstein, Frazer & Murphy, Warner R. Wilson, Jr., Frank Love, Jr.,* for appellants.

*Wallace, Wallace & Driebe, Charles J. Driebe, Albert Wallace,* for appellee.

PER CURIAM. This appeal arises out of an action for damages for the negligent killing of the plaintiff's son, in which the verdict and judgment for $15,000 was awarded against the defendants. The petition alleges that the defendant Tommy McBerry and his father, C. H. McBerry, were jointly and concurrently negligent

and that the negligence of each was the proximate cause of the death for which damages are sought. The negligence specified against C. H. McBerry, the father, was in making the shotgun available to his son at the time of his twelfth birthday and for approximately sixteen months thereafter without proper instruction or supervision as to its use. The negligence specified against Tommy McBerry, the son, was basically that of the manner in which he carried the shotgun.

Because the major premise raised by the enumeration of errors is that of insufficiency of the evidence, some detailed presentation of the evidence is necessary. It is important in considering the evidence in this case that the acts of negligence alleged against C. H. McBerry and those alleged against Tommy McBerry, his son, are completely different acts of negligence.

First, as to the evidence concerning the negligence specified against Tommy McBerry, the son: The evidence indicates that Tommy McBerry, age 13, and Wayne Ivie visited the farm of Tommy's grandparents, and that Tommy took his 20-gauge shotgun with him. This was a shotgun given him by his father. While the two boys were hunting and otherwise playing in the country near the grandparents' home, the gun, while in the possession of Tommy McBerry, discharged, striking and killing Wayne Ivie, his 13-year-old companion. The evidence shows the following in the questioning of Tommy McBerry: "Q. Were you on your way to the house or away from the house? A. We were on our way back. . . Q. Were you looking for any particular type of game or targets or anything like that? A. I think we were looking for rabbits, I am not sure. . . Q. And did you also cock the hammer of the gun? A. I guess I did, I don't remember. Q. You don't remember? A. No, sir. . . Q. It was cocked though, just before it was fired and Wayne was hit? A. I don't know, it had to be, but I don't remember. Q. You don't remember when you cocked it, but you know that it had to have been cocked? A. Yes, sir. . . Q. So being held in the position that you described and while walking along, the gun discharged, is that right? A. Yes, sir, I stumbled. Q. You stumbled? A. Yes, sir. Q. On what? A. I think my foot or my bootlaces. Q. You had on boots that day? A. Yes, sir.

. . . Q. After you stumbled, did you catch your balance? A. Yes, sir. Q. When was the gun discharged? A. When I stumbled. Q. When you stumbled? A. Yes, sir. Q. And you never did fall down? A. No, sir."

The evidence further shows without conflict that while the two boys were out in the fields the deceased Wayne Ivie at the particular time of the occurrence was walking in front of Tommy McBerry who was carrying the shotgun, and during the time they were walking the defendant Tommy McBerry stumbled, causing the shotgun to discharge into the back of the deceased Wayne Ivie, causing his death.

The cause of action against the father is that of negligence in furnishing or making available to the 13-year-old boy this shotgun which was a dangerous instrument without proper instruction and supervision as to its use. In that regard the evidence shows on cross examination of Mr. McBerry: "Q. Now Mr. McBerry, of course you know Tommy's birthday? A. Yes, sir, July 31st, 1949. Q. So July 31st, 1962, he would have been 13 years old? A. Yes, sir. Q. But you had given him the shotgun when he was 12? A. I did, in 1961. Q. Now, you gave him the shotgun, where was the shotgun kept? A. In the closet in the bedroom. Q. Same as yours? A. Yes, sir. . . Q. And you gave him his own shotgun on his birthday in 1961? A. In '61 when he was 12 years old. . . Q. You left the gun there unloaded in the closet? A. That's true, unloaded. Q. It was unloaded? A. Yes, sir. Q. And the ammunition was there? A. All the ammunition was kept on the shelf. Q. It was there? A. Yes, sir, it was there. Q. You had to reach up on the shelf to get it? A. Yes, you would have to climb up there, climb up on a chair to get it, you couldn't reach it." The boy, Tommy McBerry, testified as follows: "Q. Now, do you own or have you the use of a weapon, a shotgun more specifically? A. Yes, sir. Q. What sort of shotgun is it, Tommy? A. A 20-gauge shotgun. Q. And is it your own personal shotgun, that is to say, has it been in the family for a long time or was it given to you? A. It was given to me. Q. Do you remember when and under what circumstances it was given to you? A. I think it was on my birthday." And further, in talking about the boys in their

activities at the grandparents' farm: "Q. Was that shotgun already there or did you take it with you? A. I took it with me. . . . Q. You have or did you have shells for the shotgun? A. Yes, sir. Q. Where did you get the shells? A. I am not sure. Q. You are not sure where you got the shells? A. No, sir. Q. Were they already at home, or did you have a supply at home? A. Yes, sir, I think so, I am not sure. Q. Do you ever recall buying shells for the gun from the hardware store or any place like that? A. No, sir. Q. Then all the shells that you have used has been bought for you? A. Yes, sir. Q. Who normally bought the shells for this particular gun? A. Either my father or my uncle, I think it was my uncle. . . Q. The day you, Tommy, and Wayne went to your grandmother's house, do you remember where you actually got the ammunition? A. Yes, sir. Q. Where did you get it? A. I think it was some my uncle gave me. Q. When did he give it to you? A. I don't know sir. Q. Where did you get it that particular day? A. At home. Q. At home? A. Yes, sir. Q. In the closet? A. I think so, I am not sure. Q. Where the gun is normally kept? A. I think so, I am not sure. Q. That is your father's closet, isn't that right. A. Yes, sir."

Mrs. T. S. Wallace, grandmother of Tommy McBerry, on whose farm the incident happened, testified on cross examination that Tommy had been at her home a great many times with a shotgun, that he brought the shotgun down there whenever he wanted to, that he shot it at targets and so forth down in the woods, that the children would camp out at night and she did not know what they were shooting at.

While it is not negligence per se for a father to permit his son to have and use firearms (39 AmJur 693, Parent & Child, § 56), the circumstances of this case as disclosed by the evidence would authorize the jury to find that he had not afforded supervision of the use of the gun by his son contemplated by law as being sufficient to relieve him of a charge of negligence in that respect. There was evidence authorizing a finding of negligence against the son. Therefore, the court did not err in overruling the defendants' motions for judgment notwithstanding the verdict and motions to set aside the verdict and judgment.

Both defendants enumerate as error the timeliness of the court's appointment of C. H. McBerry as the guardian ad litem for Tommy McBerry. The appointment was made and accepted before the case proceeded to verdict and judgment. The error is predicated upon the lack of opportunity of C. H. McBerry as guardian ad litem to investigate the advisability of retaining other and further counsel for Tommy McBerry. It is urged that although Tommy McBerry had appeared by attorney and filed defensive pleadings, no defensive pleadings were in fact filed by C. H. McBerry as guardian ad litem. The trial judge observed when the question arose that both defendants had "had most adequate and competent representation." The trial judge has a discretion in appointing a guardian ad litem in such matters as these "as will best promote the ends of justice." See *Nicholson v. Wilborn*, 13 Ga. 467, 474. There was no error, for it does not appear from the record that the trial judge was guided by any other principle or that he abused his discretion.

The defendants have also enumerated as error the refusal of the trial court to charge three requests.

The first request asked the court to charge that if the jury found that defendant Tommy McBerry was not negligent in any of the particulars alleged, then they should end deliberations and return a verdict in favor of both defendants. The third request asked an instruction to the effect that unless C. H. McBerry's negligence combined with the negligence of Tommy McBerry to proximately cause the decedent's death, then a verdict should be returned in C. H. McBerry's favor. These requests were properly refused. Under the law, there may be a recovery against either or both of the responsible parties where their separate and independent acts concur to produce a single injury, despite the fact that the injury may not have happened had only one of the acts of negligence occurred, and despite the fact that the duty owed by each defendant may not be the same. *Scearce v. Mayor &c. of Gainesville*, 33 Ga. App. 411 (3) (126 SE 883). And where defendants are sued together, the jury may find against one and relieve the other, as the evidence may authorize. See

*Joyce v. City of Dalton,* 73 Ga. App. 209 (1) (36 SE2d 104); *Hawkins v. Benton Rapid Express,* 82 Ga. App. 819 (1) (62 SE2d 612).

The second request was for an instruction on the doctrine of intervening cause. More specifically it requested that the jury be instructed that they must find for defendant C. H. McBerry if they should find that defendant Tommy McBerry carried the gun with the permission of some adult other than C. H. McBerry, and that the negligence of such other adult combined with the negligence of Tommy McBerry was the sole proximate cause of the death of Wayne Ivie. This instruction was intended, apparently, to have the jury consider whether Clifford Wallace, Tommy McBerry's uncle, who brought the boys to the farm and had knowledge of the gun and, further, who might have forbidden its use or at least gone with the boys, was negligent in not doing so, and thus became an intervening cause. A charge on intervening cause specifically involving Clifford Wallace was in fact given by the court. Where the principle of a requested charge is substantially given, albeit in different language, there is no error. *Carnes v. State,* 115 Ga. App. 387, 393 (6) (154 SE2d 781). See *Georgia Power Co. v. Maddox,* 113 Ga. App. 642, 643 (1) (149 SE2d 393).

The defendants also enumerated as error the trial court's allowing plaintiff's witness, Dorothy Ledbetter, to testify over objection as to a prior incident concerning her daughter and defendant Tommy McBerry. The objection made was that testimony about the incident would be irrelevant and immaterial. The plaintiff's recast petition as amended contained an allegation of the incident. There was a special demurrer by both defendants to this allegation which was overruled, and the special demurrer was on the same grounds, i.e., relevancy. In failing to enumerate the ruling of the trial court on the special demurrer as error it was established as the law of the case that the allegation was relevant and the evidence was not inconsistent with the allegation. *Simmons v. Watson,* 221 Ga. 765 (1) (147 SE2d 322); *Dupree v. Babcock,* 100 Ga. App. 767 (1) (112 SE2d 415).

Moreover, it appears from the record that substantially the

814

same or similar testimony of the witness and also of the defendants in respect to said incident was admitted in evidence without objection. Accordingly, the admission in evidence of the testimony complained of was not harmful or prejudicial error. See cases set forth under catchword "Same evidence" under *Code* § 70-203.

*Judgment affirmed. Bell, P. J., Pannell and Whitman, JJ., concur.*