A89A0382. LDS SOCIAL SERVICES CORPORATION et al.
v. RICHINS et al.

(382 SE2d 607)

BIRDSONG, Judge.

This action was brought by Victoria and Scott Richins, as parents of Tiffany Richins, and by Scott Richins, as administrator of Tiffany's estate. Tiffany was eleven years old, but had a mental age of only three to four years. The case arose from Tiffany's death after her placement for foster care in the home of Allen and Birdie Lou Weaver through the involvement of the Church of Jesus Christ of Latter-Day Saints (the Church), the Corporation of the President of the Church (COP), the LDS Social Services Corporation (LDS), Paul Evans, Doyle Kotter, and Dean Black. Tiffany's placement in the Weavers' home for foster care was made through LDS, a Utah non-profit corporation licensed by Georgia to provide social services. Doyle Kotter and Dean Black were licensed counselors with LDS and took an active part in placing Tiffany with the Weavers, who had been recommended as possible foster parents by Paul Evans, a Bishop of the Church and leader of the Church's congregation in Chamblee, Georgia, where the Weavers and the Richins were members. The COP, LDS, Black, Kotter, and Evans are the appellants in this action.

Tiffany was first placed in foster care by arrangements made by her mother through the auspices of the Church and LDS. In 1980, the Richins moved to Hawaii, leaving Tiffany behind in Georgia with the Chamblee church congregation paying for her foster care. LDS began looking for a foster home for Tiffany in Hawaii, but was unsuccessful. Then the person caring for Tiffany decided to end her foster care, and LDS was faced with promptly finding another foster home. Because of various problems in locating another foster home, finding foster care for Tiffany became an immediate necessity. Bishop Evans knew the Weavers and suggested them to LDS. Under the circumstances, LDS approved the placement without a formal pre-placement evaluation of the Weavers. The Weavers accepted Tiffany in their home because the Church requested it, even though they had received no training in foster parenting, and no orientation, materials or guidance from LDS on the needs and care of one with Tiffany's mental retardation.

On September 8, 1980, Allen Weaver came home from work and decided that Tiffany needed to be disciplined. He has admitted slapping her "seven, eight, nine times," and pushing her head into the carpeted floor. Mrs. Weaver said that her husband told her something was wrong with Tiffany — "[s]he can't seem to breathe." The Weavers took Tiffany to the hospital emergency room. The neurosurgeon who operated on Tiffany said he observed "multiple contusions or bruises over her body," and diagnosed her as having a "subdural he-

matoma," a blood clot on the brain caused by the rupture of the veins connecting the brain with the brain covering. The doctor testified that "it takes a very significant amount of force to rupture these veins" in a child. Tiffany died on April 26, 1981, from complications arising from her original injury. Her parents filed this action for her wrongful death and their medical and funeral expenses, and her father, as administrator of her estate, also sought damages for her pain and suffering as well as punitive damages.

At the close of the evidence, all defendants moved for a directed verdict, which the trial court denied. The jury returned a verdict for the plaintiffs against the Church, LDS, Kotter, Black, and Evans. The jury found for the COP on all counts, and the jury specifically found for the Weavers on all counts, except the count seeking damages for pain and suffering but they awarded no damages against the Weavers for Tiffany's pain and suffering. Damages were awarded to the parents in the amount of $153,103 for funeral and medical expenses and $100,000 for the full value of Tiffany's life. Damages were also awarded to the administrator of Tiffany's estate for $750,000 for punitive damages. No damages were awarded for Tiffany's pain and suffering against any defendant. Judgment was entered on the verdict on May 6, 1987, and the appellants made a motion for judgment notwithstanding the verdict on May 15, 1987. This motion was also in the alternative to amend the judgment or to strike portions of the judgment. The trial court granted the motion notwithstanding the verdict as to the Church, but denied the motion as to the remaining appellants on December 8, 1987. The appellants filed their notice of appeal on December 23, 1987. The appellees thereafter on January 7, 1988, pursuant to a nunc pro tunc order filed January 12, 1988, filed a motion for a new trial on the grant of judgment notwithstanding the verdict to the Church. The appellees' motion was denied on September 12, 1988. *Held*:

1. The appellees have filed two motions to dismiss the appeal. The principal thrust of the first motion is two-pronged: (a) All appellants who moved for a directed verdict at the close of the evidence were not proper parties in the later motion for judgment notwithstanding the verdict (JNOV) or to amend or strike the judgment and thus were not entitled to the tolling period for motions JNOV provided in OCGA § 5-6-38 (a), and (b) all enumerations of error, except the denial of the motion JNOV, are not appropriate for consideration by this court on appeal.

(a) At the close of the evidence, the Church, COP, LDS, Kotter, Black and Evans moved for a directed verdict. The basis for the motion as to each appellant, but LDS, was listed. This motion was denied as to all appellants, and after the trial court considered other matters, the "church defendants," i.e., all defendants other than the

Weavers, made another motion to the effect that there was insufficient evidence to submit any issue of punitive damages against any of the church defendants to the jury. The trial court denied the motion, ruling that this was a jury question. Although the jury verdict and the judgment did not include a finding of liability of the COP, all appellants filed a motion for JNOV or in the alternative to amend or strike the judgment on behalf of all defendants/appellants on numerous grounds.

Admittedly the church defendants' motion on punitive damages was not a model of clarity, and it was not titled a motion for directed verdict. The failure to give the motion the proper title, or any title, however, is not controlling. *Jones v. Spindel*, 128 Ga. App. 88, 103 (196 SE2d 22). During the trial, the only way an issue may be eliminated from the consideration of the jury is with a motion for directed verdict, *Glenridge Unit Owners Assn. v. Felton*, 183 Ga. App. 858, 862 (360 SE2d 418), and whether punitive damages should be submitted to the jury is within the scope of a motion for directed verdict. *Miller &c. Assoc. v. Diedrich*, 174 Ga. App. 249, 256 (329 SE2d 918), reversed in part on other grounds, 254 Ga. 734 (334 SE2d 308). Consequently, while no name was given to this motion, it is the substance and function of the motion which is determinative and not the name. *Holloway v. Frey*, 130 Ga. App. 224, 227 (202 SE2d 845). Further, that this motion was not made immediately after the close of all the evidence is no defect. *Anderson v. Universal C.I.T. Credit Corp.*, 134 Ga. App. 931 (216 SE2d 719). Considering the substance of the church defendant's motion, it was a motion for directed verdict on the issue of punitive damages and stated as grounds the insufficiency of evidence to submit the issue to the jury. Thus, LDS, which is one of the church defendants, made a motion for directed verdict for which the ground was specified, and, even accepting the appellees' legal argument, LDS could properly make a motion for JNOV, at least on this one issue. Accordingly, the motion JNOV would toll the time in which all appellants could file their notice of appeal. OCGA § 5-6-38 (a). As we find no factual support for this part of the appellees' motion to dismiss the appeal, we need not address the legal conclusions they would have us draw therefrom and we express no opinion on their validity.

(b) Because all appellants are proper party appellants, they can enumerate error, under OCGA § 5-6-34 (c) any and "all judgments, rulings, or orders rendered in [this] case . . . which may affect the proceedings below . . . without regard to the appealability of the judgment, ruling or order standing alone. . . ." Thus, we find no merit to the appellees' claim that we should consider only the enumeration of error that the motion JNOV was improperly denied. Accordingly, the appellees' first motion to dismiss the appeal is denied,

and we will consider the other proper enumeration of error necessary to decide this appeal.

(c) The appellees also moved to dismiss the appeal because the notice of appeal filed by the appellants on December 23, 1987, allegedly was filed prematurely because the appellees, on January 7, 1988, filed a motion for a new trial against the Church under OCGA § 9-11-50 (c) (2), which grants authority for parties to make such a motion following the grant of a motion JNOV against them. The appellees argue that the earlier notice of appeal was ineffective, and, as no notice of appeal was filed by the appellants after the denial of the appellees' motion for a new trial against the Church on September 12, 1988, this court lacks jurisdiction to hear the appeal. Pretermitting the timeliness of the appellees' motion for new trial, the law is against them. The cases they rely on stand for the opposite factual circumstance where the motion for new trial predated the notice of appeal. The subsequent filing of a motion for new trial does not deprive the previously filed notice of appeal of its effectiveness. *Housing Auth. &c. v. Geter*, 252 Ga. 196, 197 (312 SE2d 309); *Rich v. Ga. Farm &c. Ins. Co.*, 176 Ga. App. 663 (337 SE2d 370).

Moreover, there is some question that the appellees' motion for new trial was not timely filed. Though filed through a nunc pro tunc order, in effect the appellees sought and received an extension of time in which to file their new trial motion. Extensions of time in which to file motions for new trial are expressly prohibited, OCGA §§ 9-11-6 (b) and 5-6-39 (b), and whether such can be extended through a nunc pro tunc order in emergency situations as alleged need not be addressed here in view of our other disposition of the motion. This motion is also denied.

2. Appellants enumerate as error the refusal of the trial court to "enter judgment in favor of Appellants on the grounds that the jury's finding in favor of the Weavers, the persons directly responsible for the injuries at issue, entitled the Appellants to judgment as a matter of law. . . ." We agree and reverse.

The jury reached a verdict in favor of the Weavers, either by finding for them specifically or by awarding no damages against them. This constitutes a finding that the Weavers were not liable for Tiffany's death. If the Weavers were not liable for her death, there can be no liability on the part of those who placed Tiffany with the Weavers, or who were responsible for supervising the foster care after placement. *ESAB Distrib. v. Flamex Indus.*, 243 Ga. 355, 357 (254 SE2d 328); *Duke Trucking Co. v. Giles*, 185 Ga. App. 833, 836 (366 SE2d 216). The verdict is inconsistent, contradictory, and repugnant. " 'A verdict that is contradictory and repugnant is void, and no valid judgment can be entered thereon. A judgment entered on such a verdict will be set aside.' " *Four Oaks Homes v. Smith*, 153 Ga. App. 326

(1) (265 SE2d 76); accord *Miller &c. v. Diedrich,* supra; *Wade v. Culpepper,* 158 Ga. App. 303, 305 (279 SE2d 748).

We have considered whether any independent negligent act of the appellants standing alone would support a verdict against them, as the appellees suggest, and have found none which would support the verdict. The cases cited to our attention by the appellees all stand for the proposition that an independent act of negligence by the principal or employer will sustain a judgment when the agent or employee causing the injury is relieved of liability. See *Colonial Stores v. Fishel,* 160 Ga. App. 739 (288 SE2d 21). That is not the case here. There were no independent acts of the appellants which operating without the actions of the Weavers caused Tiffany's death. Under these circumstances, the judgment against the appellants cannot stand.

In view of our treatment of this issue, it is not necessary for us to consider the appellants' other enumerations of error.

*Judgment reversed. Deen, P. J., and Benham, J., concur.*

ON MOTION FOR REHEARING.

The appellees have moved for rehearing asserting that we have overlooked certain controlling authorities. In particular, they find inconsistency between the decision in *Overground Atlanta v. Dunn,* 191 Ga. App. 188 (381 SE2d 137) (1989) and our opinion here. We find to the contrary. In *Overground* this court found that there was a separate independent basis for liability for the owner which would support the damages even though the employee who apparently caused the injuries was not found liable. Such is not the case here. Further, in *Overground* we found that the verdict was not inconsistent where the jury made no finding in regard to liability of the employee, but found against the owner. Such was also not the case here. The jury in this case specifically found in favor of the Weavers, except in one instance, and in that instance, although finding against the appellants, the jury specifically awarded no damages against any defendant. Under the verdict rendered by the jury in this case on the form prepared by appellees' counsel, there was no finding against the Weavers which would support the award of damages against the appellants.

The appellees also find fault with our failure to distinguish the case of *McBerry v. Ivie,* 116 Ga. App. 808 (159 SE2d 108). We are hard pressed to understand their reliance upon *McBerry.* In *McBerry* the jury awarded damages against both the son and the father. Consequently, the case cannot stand for the proposition the Richins assert: that the father may be held liable even though the son is found not to be liable. The *McBerry* case has no application to the present case.

The decision in *Colonial Stores v. Fishel,* 160 Ga. App. 739 (288

SE2d 21) also does not conflict with our decision here. In *Colonial Stores* there was again a separate basis for holding the owner liable when no damages were assessed against the employee. See 160 Ga. App. 740-741. Here we have found no basis for holding the other defendants liable when the jury did not find the Weavers to be liable. Significantly, the appellees have not identified any theory of liability which is not dependent upon the actions of the Weavers for imposing liability. Assuming that the child was negligently placed with the Weavers, that the Weavers were not properly trained, and that the Weavers were not visited, the appellees still have not identified even now some action, which apart from the attack by Mr. Weaver, was the proximate cause of the damages to Tiffany Richins. See *Bradley Center v. Wessner*, 250 Ga. 199 (296 SE2d 693). Under these circumstances, the findings against the appellants cannot stand.

The appellees are mistaken about the effect of OCGA § 5-6-34 (c) and would, if their argument has followed, impose a requirement to make a motion for new trial in virtually every case. That is not the law. The appeal in this case was timely and the issues considered were appealable under OCGA § 5-6-34 (c). See *Executive Jet Sales v. Jet America*, 242 Ga. 307, 308 (248 SE2d 676). Further, we remain satisfied that the motion made by the church defendants, which under the terminology used during the trial included the LDS Social Services Corporation, was a motion for directed verdict sufficient to permit the corporation to make a motion JNOV. Although not termed a motion for directed verdict, that was the function of the motion. See *Holloway v. Frey*, 130 Ga. App. 224 (202 SE2d 845).

Although not cited in their argument, the Richins have directed our attention to *Taylor v. Ledbetter*, 818 F2d 791 (11th Cir. 1987), a 42 USC § 1983 action against state officials acting under color of state law. We find no inconsistency between the *Taylor* case and the result here as it did not address any of the issues in this case.

*Motion for rehearing denied.*

DECIDED APRIL 28, 1989 —
REHEARING DENIED MAY 26, 1989 —

*Smith, Gambrell & Russell, Harold L. Russell, William W. Maycock, Edward H. Wasmuth, Jr.*, for appellants.

*Davis, Brofman, Zipperman & Kirschenbaum, E. Marcus Davis, Steven A. Suna, Bennett, Williams & Henry, Benjamin S. Williams, Phillip J. Walsh, John L. Blanford*, for appellees.