S93G1599. MIXON et al. v. CITY OF WARNER ROBINS et al.
(444 SE2d 761)

CARLEY, Justice.

James Franklin Cornelius drove his vehicle through an intersection without obeying a stop sign. He was seen doing so by appellee-defendant Officer Jeffrey Dumont of appellee-defendant City of Warner Robins (City). Officer Dumont initiated pursuit, but Cornelius refused to stop. Officer Dumont maintained his pursuit as Cornelius increased his speed. Cornelius eventually ran another stop sign and collided with a car which was being driven by Mrs. Cindy Mixon. Mrs. Mixon died as the result of the collision and appellant-plaintiff Mr. Jerry Mixon, individually and as the administrator of his wife's estate, brought suit against Officer Dumont, the City and Cornelius. The trial court granted summary judgment in favor of Officer Dumont and the City, finding that the actions of Cornelius were, as a matter of law, the sole proximate cause of the fatal collision.

The Court of Appeals affirmed the grant of summary judgment. Mixon v. City of Warner Robins, 209 Ga. App. 414 (434 SE2d 71) (1993). We granted certiorari to consider whether, as a matter of law, a jury would be unauthorized to find that the pursuit of Cornelius by Officer Dumont was a proximate cause of the fatal collision.

1. A police officer who is operating a patrol car shares the streets and highways with other members of the driving public and, as a general proposition, he has "[t]he duty at common law . . . , relatively to persons and property on the highway, . . . to exercise ordinary care to avoid injuring them." Giles v. Voiles, 144 Ga. 853 (1) (88 SE 207) (1916).

> The right to use the public thoroughfares with reasonable safety is an important liberty to be enjoyed by the citizen. The protection of his person and automobile while exercising this privilege against anyone, even an officer of the law who fails to use reasonable care[,] is guaranteed to him by [Art. I, Sec. I, Par. II of the Georgia Constitution of 1983].

*Archer v. Johnson*, 90 Ga. App. 418, 422 (83 SE2d 314) (1954).

However, a police officer is also a public servant whose professional duties include the apprehension of those who have violated the law. In the performance of his professional duties, an officer who is operating a patrol car may encounter a criminal suspect who is also operating a vehicle. When the officer initiates pursuit, the criminal suspect may immediately stop his vehicle and accede to the officer's show of authority. On the other hand, the criminal suspect may attempt to evade apprehension and, in so doing, disregard applicable traffic regulations. If the officer continues his pursuit under these circumstances, the fleeing criminal suspect's vehicle may ultimately strike another driver's vehicle and inflict an injury which, but for the officer's performance of his professional duty, would not otherwise have been sustained.

If the fleeing criminal suspect's vehicle does actually strike another driver's vehicle, he can be held civilly liable for the injuries resulting from his disregard of the applicable traffic regulations. Whether the officer, who was in ostensible performance of his professional duty, can likewise be held civilly liable is ultimately dependent upon whether the officer's pursuit of the fleeing criminal suspect can be deemed a "proximate cause" of the injury to the other driver.

> [A] holding that a defendant's conduct is not the proximate cause of the plaintiff's injury does not constitute a determination that the defendant's conduct is not a *cause in fact* of the plaintiff's injury, but rather is in the nature of *a policy decision* by the court that, for a variety of reasons, e.g., *intervening act*, the defendant's conduct and the plaintiff's injury are too remote for the law to countenance a recovery. . . . [T]he proximate-cause rubric has been used as another way of saying, among other things, that the defendant was under *no duty* to protect the plaintiff from the injury which in fact occurred. [Cit.]

(Emphasis supplied.) *McAuley v. Wills*, 251 Ga. 3, 7 (5) (303 SE2d 258) (1983). Thus, the instant case calls for "a policy decision" as to whether an officer's performance of his professional duty to apprehend criminal suspects is paramount to his duty to other drivers, such that the suspected criminal's "intervening act" of flight after pursuit was initiated mandates the conclusion that, as a matter of law, "no duty" was owed by the officer to protect another driver from an injury which "in fact" was caused by the continuing pursuit.

The policy of this state with regard to the corresponding duty that is owed to other drivers by an officer who is engaged in the vehicular pursuit of a criminal suspect is expressed by way of statute. An

officer who is operating a law enforcement vehicle in pursuit of a suspected criminal "shall not [be] relieve[d] . . . from the duty to drive with due regard for the safety of all persons." OCGA § 40-6-6 (d). It has long been recognized that, pursuant to this statute, an officer's performance of his professional duty is *not* to be considered paramount to the duty that he owes to other members of the driving public.

> The legislature intended by [OCGA § 40-6-6 (d)] . . . to protect the public on highways . . . from reckless disregard of their safety by the drivers of [pursuing law enforcement] vehicles. . . . It is desirable . . . that the officer overtake and apprehend the criminal, but it is equally as important that innocent persons, whether or not connected with the emergency to be met, not be maimed or killed in the operation.

*Archer v. Johnson,* supra at 424.

OCGA § 40-6-6 (d) does not authorize the imposition of civil liability upon an officer simply because another driver is injured in the course of the pursuit of a criminal suspect.

> No provision of law "places an absolute duty on any driver to avoid a collision. All the circumstances and conditions at the time and place[,] including the conduct of other drivers, must be taken into account." [Cit.]

*Roesler v. Etheridge,* 125 Ga. App. 358, 359 (1) (187 SE2d 572) (1972). However, OCGA § 40-6-6 (d) does provide for the continuing existence of a pursuing officer's corresponding duty to other drivers and, in so doing, it precludes an avoidance of civil liability simply because the officer was in the performance of his professional duty when another driver was injured. The officer's performance of his professional duty may be a factor to be considered in determining his civil liability to other drivers, but it is not determinative as to his lack of civil liability. If, under "all the circumstances and conditions," the officer's act of pursuing a criminal suspect's vehicle was nevertheless performed without the requisite due regard for the safety of all persons and an injury to another driver results, the officer can be held civilly liable. See *Bynes v. Stafford,* 106 Ga. App. 406, 408 (3) (127 SE2d 159) (1962).

OCGA § 40-6-6 does not specifically provide that the pursuing officer can be held civilly liable for an injury which is actually inflicted by the fleeing criminal suspect rather than by the officer himself. However, OCGA § 40-6-6 likewise does not specifically provide that the pursuing officer is afforded immunity from civil liability under those circumstances. What OCGA § 40-6-6 (d) does provide,

unambiguously and without qualification or exception, is that the pursuing officer "shall not [be] relieve[d] . . . from the duty to drive with due regard for the safety of all persons." Thus, the officer's avoidance of civil liability cannot derive from the mere intervening flight of the criminal suspect, but is solely dependent upon the officer's own adherence to his duty to drive with the requisite due regard for the safety of others. Accordingly, if a vehicular pursuit is undertaken or performed without the requisite due regard for the safety of all persons and an injury occurs as the consequence, the officer can be held civilly liable even though the injury was actually inflicted by the fleeing criminal suspect.

> Under the law, there may be a recovery against either or both of the responsible parties where their separate and independent acts concur to produce a single injury, despite the fact that the injury may not have happened had only one of the acts of negligence occurred, and despite the fact that the duty owed by each defendant may not be the same. [Cit.]

*McBerry v. Ivie*, 116 Ga. App. 808, 812 (159 SE2d 108) (1967).
In this case, the Court of Appeals correctly recognized the competing public policy interests applicable to police pursuit situations:

> Police officers have a duty to apprehend lawbreakers and society has a strong interest in allowing the police to carry out that duty without fear of becoming insurers for the misdeeds of the lawbreakers they pursue. The general public also has a significant interest in not being subjected to unreasonable risks of injury as the police carry out their duties under circumstances which require them to pursue fleeing suspects.

*Mixon v. City of Warner Robins*, supra at 416. After analyzing the cases from other jurisdictions, the Court of Appeals sought to

> establish a rule which . . . strikes the best balance between the conflicting public policies[:] . . . [W]hen a police officer is pursuing a fleeing suspect, and the suspect injures a third party as a result of the chase, the officer's pursuit is not the proximate cause nor is it a contributing proximate cause of those injuries unless the plaintiff can show that the conduct of the police officer, either in initiating or continuing the pursuit, was such that it posed a higher threat to public safety than is ordinarily incident to high speed police pursuits. Such was not the case here, and the trial court did not err in entering summary judgment in favor of [appellees].

*Mixon v. City of Warner Robins*, supra at 417.

We believe that the rule formulated by the Court of Appeals is problematic in that there is no guidance as to how to establish what "threat to public safety" is "ordinarily incident to high speed police pursuits" so as to determine whether a plaintiff has shown a "higher threat" in a particular situation. Indeed, in declaring that "[s]uch was not the case here . . . ," the court gave no indication as to why the evidence of record demanded that conclusion.

Rather, we find persuasive a recent decision of the Supreme Court of Texas analyzing the same competing public policies involved in this case. In *Travis v. City of Mesquite*, 830 SW2d 94 (Tex. 1992), the court relied upon a Texas statute containing language identical with that of OCGA § 40-6-6 (d) in providing that the statutory authorization to disregard applicable traffic regulations does not "relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons."

> We recognize that police officers must make their decisions about pursuing a fleeing suspect rapidly while under pressure, but we have concluded that there is no special statutory provision excepting police officers from the [general] legal standards for proximate cause. Police officers must balance the risk to the public with their duty to enforce the law to choose an appropriate course of conduct. Public safety should not be thrown to the winds in the heat of the chase. . . . *The decision to initiate or continue pursuit may be negligent when the heightened risk of injury to third parties is unreasonable in relation to the interest in apprehending suspects.* [Cits.] . . . The intervention of negligent or even reckless behavior by the driver of the car whom the police pursues does not . . . require the conclusion that there is a lack of proximate cause between police negligence and an innocent victim's injuries. [Cit.]

(Emphasis supplied.) *Travis v. City of Mesquite*, supra, 98-99.

2. It follows that, in order to authorize the trial court's grant of summary judgment in this case, the evidence, when construed most favorably for appellant, must have demanded a finding that Officer Dumont properly balanced the risk to the safety of other drivers and that, in his pursuit of Cornelius, he therefore acted with due regard for the safety of other drivers. "[W]hether the care required by law was exercised [by an officer] in [pursuit of a criminal suspect] will generally be a question for the jury, as are other questions of negligence. [Cits.]" *Bynes v. Stafford*, supra at 408 (3). It is only in a "plain and undisputed" case that the courts, rather than the jury, can

make that determination. *Atlanta Ob. &c. Group v. Coleman*, 260 Ga. 569, 570 (398 SE2d 16) (1990).

An example of such a "plain and undisputed" case is *Sammor v. Mayor &c. of Savannah*, 176 Ga. App. 176, 177 (2) (335 SE2d 434) (1985). There, the unlawful conduct which was first observed by the officer was the operation of a vehicle at 70-80 miles per hour in congested city traffic. The officer

> started his motorcycle, pulled onto the street, activated his emergency lights and siren, notified headquarters of the situation over his radio, and began following the vehicle. He testified that he had no intention or expectation of actually overtaking [the speeding] vehicle, the purpose of his pursuit being merely to attempt to keep the vehicle in sight, and to alert other drivers with his siren. He further stated that because of the speed at which [the] automobile was travelling, and because of the congested traffic conditions, he "knew" it was going to be involved in a collision and accordingly radioed headquarters to begin dispatching ambulances to two different intersections located several blocks ahead. The collision . . . did in fact occur at one of these intersections.

*Sammor v. Mayor &c. of Savannah*, supra at 176. Under the undisputed evidence in *Sammor*, the risk of injury to other drivers from the speeding vehicle was *already* present before the officer determined to initiate pursuit in an attempt to ameliorate that *existing* risk. Thus, the officer's "pursuit" did not heighten any risk to other drivers and, as a matter of law, could not be a proximate cause of the ensuing collision.

Construing the disputed evidence in this case most favorably for appellant, Officer Dumont observed Cornelius slow to three-to-five miles per hour before proceeding through a stop sign in a residential area. Thus, even though Cornelius had committed a traffic violation and apprehension was warranted, the traffic violation had been minor and the risk of serious injury to other drivers had been slight. Compare *Sammor v. Mayor &c. of Savannah*, supra. When Officer Dumont began his pursuit, Cornelius did not accede to the show of authority, but increased his speed. In his effort to evade apprehension, Cornelius ultimately accelerated his vehicle to 55-60 miles per hour, almost twice the posted speed limit. Despite the fact that Cornelius' original traffic violation had been minor and that his response to Officer Dumont's pursuit had been to increase his speed and thereby heighten the risk to other drivers, Officer Dumont nevertheless maintained his pursuit and was "right up on [Cornelius'] bumper" only seconds before Cornelius crashed into Mrs. Mixon's vehicle.

On this evidence, a jury would be authorized to find that Officer Dumont had failed to balance the risk to the safety of other drivers when he persisted in his efforts to arrest Cornelius for a minor traffic offense even after Cornelius had escalated his flight into a high-speed chase in a residential area and that Officer Dumont had, therefore, failed to act in accordance with his duty under OCGA § 40-6-6 (d) to pursue Cornelius with due regard for the safety of other drivers. Thus, Cornelius' "intervening act" of flight after pursuit was initiated would not mandate, as a matter of law, the legal conclusion that "no duty" was owed by Officer Dumont to protect Mrs. Mixon from the fatal injury which "in fact" was caused by the continuing pursuit.

> It is well settled in Georgia, that "(Q)uestions of . . . proximate cause are peculiarly matters for the jury, and a court should not take the place of the jury in solving them, except in plain and indisputable cases." [Cits.]

*Williams v. Kennedy*, 240 Ga. 163 (1) (240 SE2d 51) (1977). It follows that the lack of "proximate cause" in the instant case is not "plain and undisputed" and that the Court of Appeals erred in affirming the grant of summary judgment in favor of Officer Dumont and the City on that basis.

3. In addition to the grant of summary judgment in favor of Officer Dumont and the City, appellant also enumerated as error the trial court's ruling on a discovery issue. Since we have reversed the Court of Appeals' affirmance of the grant of summary judgment, we remand the case to that court so that it may resolve the enumeration concerning the trial court's discovery ruling.

*Judgment reversed and case remanded. All the Justices concur, except Hunt, C. J., who concurs in the judgment only, and Fletcher, J., who concurs specially.*

FLETCHER, Justice, concurring specially.

The extent to which law enforcement officials will be held liable for acts undertaken in the fulfillment of their duty is an especially difficult issue in the current legal atmosphere. Had Officer Dumont not pursued Cornelius and Cornelius continued to run stop signs or had Cornelius simply sped away after seeing Officer Dumont and been involved in the same accident, appellant still would be suing Officer Dumont for his failure to fulfill his duties as a law enforcement officer. See, e.g., *Landis v. Rockdale County*, 212 Ga. App. 700 (445 SE2d 264) (1994). Recognizing the conundrum in which law enforcement officers are placed daily, both the rule established by the Court of Appeals and the rule adopted by the majority in this case attempt to balance the necessity of police pursuit and the threat of harm to

public safety by imposing upon officers the responsibility of using reasonable care to insure that their conduct in initiating and continuing pursuit of a fleeing offender does not pose an undue risk of harm to the public.

I fully concur with the majority opinion's rejection of authority from other jurisdictions holding as a matter of law that an officer's conduct in initiating and continuing pursuit of a fleeing offender can never be a proximate cause of a collision between the fleeing offender and another driver. However, I disagree with the majority's determination that the proper inquiry in such cases is whether in initiating and continuing pursuit the law enforcement officer properly balanced the risk to the safety of other drivers. This far-reaching rule ignores the statutory privileges accorded law enforcement officers engaged in pursuit and, in effect, renders them subject to liability for the negligent acts of fleeing offenders in all cases except where it is absolutely clear that the officer's pursuit had no effect whatsoever on the offender's conduct or flight. See *Sammor v. Mayor &c. of Savannah*, 176 Ga. App. 176 (2) (335 SE2d 434) (1985).

I believe the better approach, and one recognizing the important and necessary role of police pursuit which led our legislature to grant officers engaged in such pursuits special privileges, is that adopted by the Court of Appeals. The rule established by the Court of Appeals imposes upon officers engaged in pursuit of a fleeing offender the duty not to create "a higher threat to public safety than is ordinarily incident to such high-speed pursuits." This rule recognizes that an officer's duty to exercise due regard for the safety of others varies with the circumstances, see *Lau's Corp. v. Haskins*, 261 Ga. 491, 493 (405 SE2d 474) (1991); Prosser, Law of Torts, 5th ed., §§ 31, 33 (1984), and that as a matter of public policy, the law authorizes law enforcement officers to violate certain traffic laws while in pursuit despite the risks involved, OCGA § 40-6-6. The legislature itself, after much deliberation, balanced the public's competing interests in effective law enforcement and safe public ways in granting such privileges.

Accordingly, like the Court of Appeals, I would hold that when an officer is involved in a high-speed chase, an act authorized by our statutes despite the inherent risks of such pursuit, it is the officer's duty not to create through his or her conduct any greater risk to public safety than that involved in every pursuit. This rule strikes the proper balance between holding that an officer's conduct can never be a proximate cause of a collision between the fleeing offender and another and a rule subjecting officers to liability for every injury arising from police pursuit. I concur with the majority because applying this standard to the present facts, I believe a jury would be authorized to find that Officer Dumont continued to accelerate and pursue Cornelius through a residential neighborhood for a minor traffic infraction

and in violation of police department standard operating procedures and in doing so created a threat to public safety higher than that ordinarily incident to police pursuits.

DECIDED JUNE 27, 1994 —
RECONSIDERATION DENIED JULY 21, 1994.

*Davis, Gregory & Christy, Hardy Gregory, Jr., O'Neal, Brown & Sizemore, Manley F. Brown, Carl A. Veline, Jr.,* for appellants.

*Jones, Cork & Miller, Charles L. Ruffin, David A. Pope, Warren C. Grice,* for appellees.