A92A1297. MANUEL et al. v. KOONCE et al.
A92A1298. ROWLAND v. KOONCE et al.
(425 SE2d 921)

SOGNIER, Chief Judge.

Plaintiffs, individually and/or in their representative capacities, brought wrongful death and personal injury suits against Scott Rowland; Rowland's mother and stepfather, Joann and H. L. Manuel; Scott Steedley and his father, W. J. Steedley; and Huntley's Jiffy Stores, Inc. and its employee Pamela Youmans. The trial court denied the motions for summary judgment filed by Rowland and the Manuels, and this court granted their applications for interlocutory appeal. The appeal by Huntley's Jiffy Stores and Youmans was withdrawn with the permission of this court.

The record establishes that appellants Joann and H. L. Manuel went to Florida for a long weekend and for the first time ever left 16-year-old appellant Scott Rowland at home alone. On July 8, 1989, the Saturday the Manuels were away, Rowland either personally or through an intermediary purchased two cases (twenty-four bottles) of beer from Huntley's Jiffy Stores and carried it to the Manuels' home, where over the course of the evening it was consumed. Rowland's girl friend, Darby Hester, asked her friend, Tina Dowling, who was with Scott Steedley in his Mazda truck, to take her to the Manuels' home that evening. The evidence in the record conflicts whether the new-comers were invited, whether they were asked to leave, whether Steedley was inebriated before he arrived, and whether Steedley consumed any of Rowland's beer at the party. It is uncontroverted that Dowling, not Steedley, was driving Steedley's truck when she, Steedley, and Hester left the Manuels' home. Dowling drove Hester home then went to her own home, drove the truck to a convenience store with Steedley to purchase snack food for him, and then returned to her home before she yielded control of the truck to Steedley. Shortly after leaving Dowling's home, Steedley crashed his truck headlong into a seven-passenger van carrying fifteen people, including appellees and/or their decedents. Two adults and four minors in the van were killed; Steedley and eight persons in the van were injured.

1. In Case No. A92A1297, the Manuels contend the trial court erred by denying their motion for summary judgment. The evidence is uncontroverted that prior to the incident in issue, Rowland had never consumed any alcohol at the Manuels' home, provided alcohol to others at the Manuels' home, or hosted a gathering there at which Rowland's friends or guests had provided any alcohol. It is uncontroverted that no alcohol was present in the home when the Manuels left and that before their departure they instructed Rowland not to have any "parties," other than a slumber party with two or three of his male friends, and explicitly directed Rowland not to use or be involved in the use of alcohol during their absence. Ms. Manuel stated in her deposition that she considered the instructions to Rowland about no parties or alcohol to have been her "duty as a parent" and explained the need for those instructions "[b]ecause he's a teenager and that's what teenagers do when they get a chance to." Although the Manuels left Rowland alone, the evidence reflects that they did so after contacting Rowland's natural father and obtaining his agreement to "keep [an] eye out and check on" his son.

Construing conflicting evidence in favor of appellees as the nonmovants, see generally *GMS Air &c. v. Dept. of Human Resources*, 201 Ga. App. 136, 139 (410 SE2d 341) (1991), the only evidence regarding the Manuels' knowledge of any prior involvement of Rowland with alcohol consisted of an incident that, according to Jay

Smith, Rowland's high school friend, occurred in the fall of 1988. Smith deposed that while Rowland was a passenger in Smith's car, the police stopped Smith and discovered the two underage boys had been drinking. Smith deposed that both he and Rowland were fined and that their parents were summoned to the police station regarding the matter.

(a) We agree with the Manuels that to the extent appellees assert a claim against them under OCGA § 51-1-40, the trial court erred by denying the Manuels' motion for summary judgment. The evidence is uncontroverted that the Manuels did not wilfully, knowingly, and unlawfully sell, furnish, or serve alcoholic beverages to Steedley, id. at (b), and that Rowland's actions in regard to the alcoholic beverages at the Manuels' home were "in the absence of and without the consent of" the Manuels. Id. at (d).

(b) Pretermitting the Manuels' arguments that OCGA § 51-1-40 preempted appellees' claims against them under a theory of negligent parental supervision, we find that the Manuels were entitled to summary judgment on that claim. "[T]he true test of parental negligence *vel non* is whether in the exercise of ordinary care [the parent] should have anticipated that harm would result from the unsupervised activities of the child and whether, if so, [the parent] exercised the proper degree of care to guard against this result. [Cit.]" *Hill v. Morrison*, 160 Ga. App. 151 (286 SE2d 467) (1981). Appellees present the ingenious argument that leaving a teenager unsupervised over a long weekend is equivalent to allowing a child (and all the child's friends) unsupervised access to a dangerous instrumentality, i.e., alcohol. See, e.g., *Saenz v. Andrus*, 195 Ga. App. 431 (393 SE2d 724) (1990) (butcher knife); *McBerry v. Ivie*, 116 Ga. App. 808 (159 SE2d 108) (1967) (shotgun); *Glean v. Smith*, 116 Ga. App. 111 (156 SE2d 507) (1967) (loaded pistol). We agree with the Manuels, however, that they were entitled to summary judgment even if the "dangerous instrumentality" case law is applicable here. "In those cases in which the parent did not *furnish* the dangerous instrumentality but through negligence allowed access thereto to the child, the standard for imposing liability upon a parent is whether the parent knew of the child's proclivity or propensity *for the specific dangerous activity*. If such knowledge cannot be shown on the part of [the parents], then liability cannot attach to [them], as a parent is not an insurer that the child will not harm another." (Citations and punctuation omitted.) *Saenz*, supra at 433 (2).

The Manuels adduced evidence establishing that they neither knew nor should have known that Rowland had a propensity for making alcohol available to underage guests at their home during their absence. Although Smith's testimony about the incident in which Rowland was found intoxicated in Smith's car placed the Manuels on

notice of Rowland's personal propensity to consume alcohol away from his home, it did not place them on notice that Rowland had any propensity whatsoever to violate their explicit orders and furnish alcohol to others at the Manuels' home. See *Saenz*, supra (knowledge that child threw pocketknife against wall did not equal knowledge of child's propensity to throw butcher knives at others). Since the Manuels had no reason to anticipate that Rowland would violate their orders about alcohol and parties *and* furnish alcohol to other minors at their home during their absence, they had no duty to guard against it. Id. We do not agree with appellees' contention that the Manuels' order to Rowland *not* to have parties and alcohol at the home during their absence gives rise to an inference that the Manuels knew of Rowland's propensity to engage in such activity. Even if such an inference is proper, it cannot rebut the Manuels' positive and uncontradicted testimony to the contrary. See generally *Mitchell v. Haygood's Hauling &c.*, 194 Ga. App. 671, 672 (1) (391 SE2d 481) (1990).

We decline appellees' invitation to follow the example of the New Jersey court in *Morella v. Machu*, 563 A2d 881 (N.J. Super. A. D. 1989), by concluding that legislation such as OCGA § 51-1-40 supports this court's expansion of the common law to place a duty on parents, owed to the general public, "to exercise reasonable care to arrange for competent supervision of their teenagers while [parents are] out of the state on vacation." Id. at 885.

2. In Case No. A92A1298, Rowland contends the trial court erred by denying his motion for summary judgment because the facts established uncontrovertedly that he is not liable to appellees on their claim arising under OCGA § 51-1-40 (b). We agree and reverse.

OCGA § 51-1-40 (b) provides in pertinent part that "a person who willfully, knowingly, and unlawfully sells, furnishes, or serves alcoholic beverages to a person who is not of lawful drinking age, knowing that such person will soon be driving a motor vehicle, . . . may become liable for injury or damage caused by or resulting from the intoxication of such minor . . . when the sale, furnishing, or serving is the proximate cause of such injury or damage."

When the evidence is construed in favor of appellees, a fact question remains whether Rowland wilfully, knowingly, and unlawfully furnished alcohol to Steedley, a person not of lawful drinking age. The record contains circumstantial evidence not rebutted by any positive direct evidence from which a jury might find that Steedley imbibed alcohol furnished to him by Rowland.

However, liability under OCGA § 51-1-40 (b) also requires proof that the defendant served alcohol to a minor "knowing that [the minor] will soon be driving a motor vehicle." "[K]nowledge of imminent driving" is a prerequisite to liability under the statute. See *Whelchel v. Laing Properties*, 190 Ga. App. 182, 191 (1) (378 SE2d 478) (1989)

(Beasley, J., concurring specially). Accord *Southern Bell Tel. &c. Co. v. Altman*, 183 Ga. App. 611, 612 (2) (356 SE2d 385) (1987) (interpreting *Sutter v. Hutchings*, 254 Ga. 194, 198 (327 SE2d 716) (1985), which set forth language virtually identical to that in OCGA § 51-1-40 (b)). The uncontroverted evidence of record established that Rowland accompanied Dowling, Steedley, and Hester to Steedley's truck as they departed, and watched as Dowling, not Steedley, drove the truck away. Rowland asserted in both his affidavit and his deposition that he understood from Dowling that Steedley would not be driving and that Dowling had agreed to drive Steedley home. Although Dowling could not recall discussing the matter with Rowland, she deposed that she "took it upon [her]self" to drive because "after I noticed [Steedley's intoxicated state] there was no way I'd let him drive." Thus, in addition to the uncontroverted evidence that Steedley did not drive his truck upon departing Rowland's party, the testimony of both Dowling and Rowland is in accord with Rowland's position that he understood Dowling was not going to allow Steedley to drive his truck while intoxicated.

We do not agree with appellees that under this evidence a fact question exists whether it was reasonably foreseeable to Rowland that Steedley would "soon" be driving his truck. The actual knowledge Rowland possessed was that Steedley was not driving when he left the Manuels' home. See *Whelchel*, supra at 185 (interpreting language in *Sutter*, supra). While Rowland could not *know* what actions Steedley would take once out of Rowland's presence, there is no evidence to controvert Rowland's testimony that in regard to Steedley's future conduct, he *believed* Dowling would not allow Steedley to drive while intoxicated. Even accepting, arguendo, appellees' argument that Rowland was required to prove the reasonableness of his belief that Steedley would not soon be driving, confirmation of that belief is present in the record both in the uncontroverted evidence of Dowling's behavior at the scene (taking Steedley's keys and assuming the task of driving his truck) and Dowling's deposition testimony regarding her intention at that time not to allow Steedley to drive while intoxicated. No evidence was adduced in the record that indicates Rowland's belief was not reasonable. See generally *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). Under the position appellees take regarding the evidence necessary to prove lack of liability under OCGA § 51-1-40 (b), Rowland could prove he did not "know" Steedley would "soon" be driving only if Rowland proved he followed Steedley throughout the evening and made sure he did not drive at any point while intoxicated. Given that Rowland's liability under OCGA § 51-1-40 (b) is premised explicitly upon his knowledge that Steedley would *soon* be driving, we reject appellees' argument that a jury question exists unless Rowland proved he could not reasonably

have foreseen that Steedley would *later* be driving. See *Southern Bell*, supra.

Under the undisputed facts of this case, as a matter of law Rowland satisfied the duty he owed to third parties under OCGA § 51-1-40 (b) not to furnish alcohol to a minor he knew would soon be driving a motor vehicle. We therefore hold that the trial court erred by denying Rowland's motion for summary judgment. See id.

*Judgment reversed. Birdsong, P. J., Carley, P. J., Pope, Cooper, Andrews and Johnson, JJ., concur. McMurray, P. J., and Beasley, J., dissent.*

McMurray, Presiding Judge, dissenting.

In view of the principle that all legitimate inferences must be drawn in favor of the party resisting a motion for summary judgment, I must respectfully dissent. See *Anderson v. Redwal Music Co.*, 122 Ga. App. 247, 249 (176 SE2d 645). In my view, genuine issues of material fact remain with regard to appellees' claim of negligent parental supervision and with regard to appellees' allegation that Rowland wilfully, knowingly and unlawfully served an alcoholic beverage (beer) to a person who was not of lawful drinking age.

1. "[T]he true test of parental negligence *vel non* is whether in the exercise of ordinary care [the parent] should have anticipated that harm would result from the unsupervised activities of the child and whether, if so, [the parent] exercised the proper degree of care to guard against this result. *Muse v. Ozment*, 152 Ga. App. 896 (264 SE2d 328) (1980)." *Hill v. Morrison*, 160 Ga. App. 151 (286 SE2d 467). In the case sub judice, the majority holds that no genuine issue of material fact remains with regard to the issue of negligent parental supervision, finding that the Manuels "neither knew nor should have known that Rowland had a propensity for making alcohol available to underage guests at their home during their absence."[1] In my view, there is evidence which reveals that the Manuels were aware of their child's propensity to illegally share and consume alcohol with his teenage friends.

In his deposition, Rowland testified that he had been tried before a jury and convicted of an alcohol related offense and that he was on probation for this offense at the time the Manuels left him at home alone with permission to throw the unsupervised slumber party.[2] Fur-

---

[1] The majority also states that the weekend of the fatal collision was "the first time [the Manuels] ever left 16-year-old appellant Scott Rowland at home alone." However, Jay Smith, one of Rowland's teenage friends, testified that the weekend of the fatal accident was not the first weekend Rowland's parents left Rowland at home alone. Smith explained that he often spent the night at Rowland's house and that "on occasion [the Manuels would leave the boys unsupervised and] go out of town for a Braves game or something another like that."

[2] Rowland testified that his conviction was the result of an illegal search of the trunk of

ther, Jay Smith's deposition testimony reveals that Rowland's alcohol related conviction was not the only encounter Rowland had with law enforcement over the illegal use of alcohol before the unsupervised beer party of July 1989. Specifically, Smith testified that he and Rowland often shared in the purchase and consumption of alcohol; that they "started getting in trouble . . ." for consuming alcohol when the boys first obtained access to an automobile and that "[t]he first occasion was when we got a minor drinking charge. Um, I was driving my car — I'd got a car by then [and] we got a minor drinking charge and our parents had to go to the jail and get us out. . . . We were driving, we got pulled over. I didn't have any lights on, and we'd been drinking. . . ."

Rowland testified that the purchase' and consumption of alcohol with his friends was a common practice before the fatal collision; that it was then not uncommon for him to come home drunk; that he had a history of disciplinary suspensions from school prior to July 1989, and that before then he consumed illegal drugs (marijuana).[3] Rowland also testified as to his parents' cavalier attitude toward his illegal drinking activities, affirming that he was never disciplined "because of drinking before these events in July 1989[.]" It is my view, that this evidence and Rowland's mother's testimony that she instructed Rowland not to engage in drinking activities during the Manuels' Florida vacation raises genuine issues of material fact regarding the Manuels' knowledge of Rowland's proclivity to engage in beer drinking activities with his friends. In other words, the circumstances of the case sub judice demand that a jury determine whether the Manuels should have, in the exercise of ordinary care, anticipated their son's beer drinking slumber party and, if so, whether the Manuels exercised the proper degree of care in guarding against such dangerous conduct. See *Hill v. Morrison*, 160 Ga. App. 151, supra. I, therefore, do not adopt the majority's characterization of appellees' claim of parental negligence as "ingenious" or otherwise quixotic. On the contrary, it is my view that appellees' theory of liability is consistent with Georgia's long standing policy of parental liability in cases of parental indifference to a child's proclivity or propensity toward specific dangerous conduct. See *McBerry v. Ivie*, 116 Ga. App. 808 (159 SE2d 108) (shotgun); *Glean v. Smith*, 116 Ga. App. 111 (156

---

his automobile while he and another teenage boy were dining at a Burger King restaurant. Rowland's natural father, John Harvey Rowland, testified that his son's alcohol related conviction was not justified, explaining that the alcohol found in Rowland's possession belonged to Rowland's teenage companion.

[3] Jay Smith affirmed Rowland's admission that he often consumed alcohol with his friends, testifying that Rowland's natural father threw an "end of the school year . . ." party for Rowland before the July 1989 collision; that minors consumed alcohol at this party and that it was common for Rowland to participate in such beer drinking activities.

SE2d 507) (pistol); *Herrin v. Lamar*, 106 Ga. App. 91 (126 SE2d 454) (rotary lawnmower); *Faith v. Massengill*, 104 Ga. App. 348 (121 SE2d 657) (BB gun); *Davis v. Gavalas*, 37 Ga. App. 242 (139 SE 577) (velocipede). To hold otherwise, ignores the fact that alcohol in the hands of a child is a dangerous instrumentality and is at least as dangerous as a child's reckless use of a velocipede, a BB gun, a rotary lawnmower, a pistol or a shotgun.

Further, I do not think that recognition of parental liability in circumstances such as the case sub judice extends parental responsibility into the realm of impossibility. My view simply favors parental responsibility under circumstances where it is reasonably foreseeable that a child will engage in criminally dangerous conduct and where it is likely that the foreseeable conduct will harm others. To say less, licenses the demise of parental responsibility and fosters the view of Rowland's mother, i.e., that teenagers will engage in illegal and dangerous activities "when they get a chance to." It appears that similar views compelled a New Jersey appeals court to go even further, holding that "rational development of the common law in light of . . . declared legislative policy[, i.e., to discourage under-age drinking by placing more responsibility on adults,] requires parents to arrange for proper supervision of their teenagers when they are away from the home for a period of time during which spontaneous parties featuring alcoholic beverages are reasonably foreseeable. In default of the exercise of due care, they must answer in damages caused to innocent persons. See *Macleary v. Hines*, 817 F.2d 1081 (3rd Cir. 1987); *Mitseff v. Wheeler*, 38 Ohio St. 3d 112, 526 N.E.2d 798 (1988); *Koback v. Crook*, 123 Wis.2d 259, 366 N.W.2d 857 (1985), and *Congini v. Portersville Valve Co.*, 504 Pa. 157, 470 A.2d 515 (1983), all of which adopted the legislative standard of conduct relating to underage consumption of alcohol as applicable to tort liability. *See Restatement, Torts*, 2d § 286 at 25 (1965)." *Morella v. Machu*, 563 A2d 881, 884 (N.J. Super. A. D. 1989).

2. OCGA § 51-1-40 (b) provides, in pertinent part, that "a person who willfully, knowingly, and unlawfully sells, furnishes, or serves alcoholic beverages to a person who is not of lawful drinking age, *knowing that such person will soon be driving a motor vehicle*, . . . may become liable for injury or damage caused by or resulting from the intoxication of such minor . . . when the sale, furnishing, or serving is the proximate cause of such injury or damage." In the case sub judice, the majority forecloses liability under this Code subsection because of undisputed evidence that Steedley did not drive his pickup truck upon leaving the party and because of Rowland's self-serving testimony that Tina Dowling informed him that she would drive Steedley

home.[4] I cannot concur in this reasoning.

The majority's conclusion is based upon its construction of the language, "knowing that such person will soon be driving a motor vehicle." Specifically, the majority assumes that this statutory language requires proof or disproof of a person's knowledge of a future event. It is highly unlikely that any person can predict the future with absolute certainty. It is my view, that a more realistic reading of the above statutory language is whether a reasonable person, under the same or similar circumstances, would reasonably expect that "such person will soon be driving a motor vehicle." In other words, the question of knowledge does not relate to duty, but to proximate cause. Thus, it is my view that in breaching the statutory duty of care by serving alcohol to Steedley, Rowland is subject to liability if it was reasonably foreseeable that Steedley would soon be driving. See *Sagadin v. Boal,* 221 Cal. Rptr. 675, 685 (3rd. Dist. 1985).

"[T]he duty upon the provider of alcohol is not merely to prevent the intoxicated driver from driving. The duty arises earlier. It is to stop serving alcohol to the driver who is noticeably intoxicated (or share the intoxicated driver's liability to injured third persons)." *Sutter v. Hutchings,* 254 Ga. 194, 197 (4) (327 SE2d 716). In the case sub judice, there is evidence that Rowland was aware that Steedley drove his truck to the party; that beer was made available to Steedley at the party, and that Steedley became drunk after drinking beer at the party. This evidence raises genuine issues of material fact as to whether a reasonable person, under the same or similar circumstances, should have known that Steedley would soon be driving a motor vehicle.

DECIDED DECEMBER 3, 1992.

*Swift, Currie, McGhee & Hiers, Stephen L. Cotter, Lloyd B. Hedrick, Jr.,* for appellants.

*The Keenan Ashman Firm, Don C. Keenan, David S. Bills,* for appellees.

---

[4] Tina Dowling testified that she does not recall informing Rowland that she was going to drive Steedley home. On the contrary, she testified that it was her idea to drive and that "Scott Rowland [had nothing] to do with the fact that [she] drove[.]" In fact, Darby Hester's deposition testimony reveals that Rowland did not walk Steedley, Hester and Dowling to Steedley's truck after the beer party to insure Steedley's safe passage home. She testified that "Scott Rowland come outside [to tell] us 'bye.' "