A99A0502. McNAMEE et al. v. A. J. W., a minor, et al.
(519 SE2d 298)

BLACKBURN, Presiding Judge.

Upon our grant of their application for interlocutory appeal, the defendants, Don McNamee and Lynda McNamee, and their son, Steven McNamee, a minor, appeal the denial of their motion for summary judgment by the trial court. Gordon and Louisa Wiles, and their daughter, A. J. W., a minor, nine months junior to Steven, brought the underlying civil action seeking damages against Steven's parents for negligence and furnishing alcohol to A. J. W. and against Steven for sexual battery, rape, negligence, and furnishing alcohol to A. J. W. At the time of the subject incident, both A. J. W. and Steven were in the tenth grade in high school.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant or denial of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

(Punctuation omitted.) *Urban v. Lemley*, 232 Ga. App. 259 (501 SE2d 529) (1998).

Construing the facts most favorably to A. J. W. and her parents, on November 26, 1996, 15-year-old A. J. W. went home after school with Steven, who had just recently turned 16 years old. Although A. J. W. told her parents that she was going to Steven's house to study, she actually went there to drink beer and to "show everybody that [she] wasn't such a goody two-shoes like everybody thought." A. J. W. states that she, Steven, and Rusty, another male friend, drank alcoholic beverages and smoked marijuana. After voluntarily consuming two and one-half Zimas and taking "shotgun hits" of marijuana, A. J. W. does not remember what happened until she woke up naked in a bedroom closet. A. J. W. deposed that while she does not remember him being there, her boyfriend told her that he came over to Steven's house while she was naked and in the closet. The record does not contain any testimony from A. J. W.'s boyfriend.

When she woke up, Steven told A. J. W. that his father had come home, taken Rusty to his alcohol/probation meeting, and returned.

A. J. W. admits that rather than reporting what took place to Steven's father, she sneaked out of the house with Steven and they walked to her home. A. J. W. was wearing Steven's pants and his mother's underwear. Steven agrees with A. J. W.'s version of what occurred after his father arrived home. Upon arriving home, A. J. W. did not report to her parents any of the events that had occurred. The day after the incident, Steven, Rusty, and another male friend went to A. J. W.'s place of employment and threw her panties over the counter at her. A. J. W. averred that she learned about the sexual relations with Steven when Rob Elkins called her on the telephone to tease her about losing her virginity. The record does not contain any testimony from Rob Elkins. A. J. W.'s parents found out about the incident from a parent of one of A. J. W.'s friends a week after it happened and initiated civil and criminal action.

Steven avers that A. J. W. voluntarily participated in the drinking, the smoking, and having sex with him. He contends that A. J. W. initiated oral sex and asked him to have sexual intercourse with her. He went upstairs and got a condom and asked her several times if she was sure she wanted to have sex. He avers that after they had sex, A. J. W. did not feel well and she lay down on his bedroom floor to sleep. Later, she vomited on her clothes and then took a shower before he walked her home.

Although A. J. W. deposed that she was under the impression that Steven's father had purchased the beer for Steven, Steven averred that his parents did not know that he had alcohol in the house. Steven contends that Rusty had provided both the alcohol and marijuana, which he hid in the unfinished basement of the house. The record does not contain any testimony from Rusty.

1. The McNamees contend that as a matter of law, under the facts herein, they cannot be held civilly liable for negligence resulting from any actions of Steven against A. J. W., if proved.

> It is well settled that by common law and in this state unless changed by statute, parents are not liable in damages for the torts of their minor children merely because of the parent-child relationship[;] when liability exists it is based on a principal-agent or a master-servant relationship where the negligence of the child is imputed to the parent, or it is based on the negligence of the parent in some factual situation such as allowing the child to have unsupervised control of a dangerous instrumentality. *Corley v. Lewless*, 227 Ga. 745 (182 SE2d 766) (1971). . . . As stated in *Assurance Co. of America v. Bell*, 108 Ga. App. 766 (134 SE2d 540) (1963) the true test of parental negligence *vel non* is whether in the exercise of ordinary care [the parent] should have antici-

pated that harm would result from the unsupervised activities of the child and whether, if so, [the parent] exercised the proper degree of care to guard against this result.

*Hill v. Morrison*, 160 Ga. App. 151 (286 SE2d 467) (1981).

Under the facts in this case, Steven's parents cannot be civilly responsible based solely upon his actions in having sex with a 15-year-old girl in their home, without their knowledge, while they were not home. We have previously declined to place a duty on parents to arrange for supervision of their teenagers while they are away from home. See *Manuel v. Koonce*, 206 Ga. App. 582, 585 (1) (b) (425 SE2d 921) (1992), rev'd on other grounds, *Riley v. H & H Operations*, 263 Ga. 652, 655, n. 3 (436 SE2d 659) (1993). The evidence in the record indicates that Steven's parents had no reason to suspect that he was engaging in the activities in question while they were at work. Therefore, the trial court erred in denying Don and Lynda McNamee's motion for summary judgment on the plaintiffs' negligence claims.

2. The McNamees contend that they are entitled to summary judgment on the plaintiffs' claims of serving alcohol to a minor. OCGA § 51-1-18 (a) provides: "The custodial parent or parents shall have a right of action against any person who shall sell or furnish alcoholic beverages to that parent's underage child for the child's use without the permission of the child's parent."

(a) The McNamees contend that the uncontroverted evidence establishes that Rusty Shipman purchased and delivered the alcohol. Although A. J. W. deposed that Steven said his father had purchased the beer for Steven to drink, the McNamees' contention that A. J. W.'s testimony is hearsay is correct.

The admission by a party to the record shall be admissible in evidence when offered by the other side, except in the following cases: . . . (2) Admissions of one of several parties with no joint interest, unless the issue is of such a character that the effect of the admission can be confined to the one party alone.

OCGA § 24-3-31.

In the case of joint defendants, the admission of one is admissible to establish the plaintiff's case against that defendant. *Moore v. McAfee*, 151 Ga. 270 (7) (106 SE 274) (1920). And, upon independent proof of a joint interest, the admissions of one party may be given in evidence to bind the other parties as well.

*Kirk v. Barnes*, 147 Ga. App. 423, 424 (1) (249 SE2d 140) (1978).

Therefore, because the plaintiffs have brought separate causes of action against the McNamees and Steven, these defendants do not have joint interests in this litigation and Steven's alleged remarks remain inadmissible hearsay.

(b) The McNamees contend that even if Don McNamee purchased the beer, they did not "provide" it to A. J. W. within the meaning of the statute. We agree.

It is undisputed that Steven's parents were not at home when A. J. W. came over to their house, and they were unaware that A. J. W. would be coming to their house. Additionally, Steven and A. J. W. sneaked out of the house after Steven's father came home.

This case is distinguishable from *Eldridge v. Aronson*, 221 Ga. App. 662 (472 SE2d 497) (1996), wherein we reversed the grant of summary judgment to the defendants in an action for damages pursuant to OCGA § 51-1-18. In *Eldridge*, Mrs. Aronson purchased beer for her son's party, was present during the party, and also helped serve the beer to her son's guests. Although Mr. Aronson was not present during the party this Court determined that he could be held responsible because the evidence showed that he had served alcohol to high school students on several previous occasions.

In the present case, there is no evidence that the McNamees had previously provided beer or alcohol to Steven and his friends. Additionally, there is no evidence that the McNamees "provided" alcohol to A. J. W. within the meaning of the statute. Therefore, the trial court erred in denying the McNamees' motion for summary judgment on the plaintiffs' claim based upon furnishing alcohol to a minor.

3. Steven contends that A. J. W.'s alleged consent can be used as an absolute defense in the present civil action against him. In determining this issue, we must keep in mind two distinguishing facts of this case: (1) that both the plaintiff/victim and defendant/offender were minors; and (2) that the action is one for monetary civil damages, not involving public policy considerations protected by criminal statutes.

The plaintiffs contend that consent can never be used as a defense for the sexual battery/rape of a person under the age of 16. Consent is not a defense to a *criminal* statutory rape charge under OCGA § 16-6-3.[1] However, under Georgia law

> [t]he violation of a penal statute does not automatically give rise to a civil cause of action on the part of one who claims to have been injured thereby. Although OCGA § [16-6-3] establishes the public policy of this state, nothing within its provi-

---

[1] Consent is not a defense in criminal prosecution for statutory rape where offender is also a minor. See *In the Interest of B. L. S.*, 264 Ga. 643 (449 SE2d 823) (1994).

sions purports to create a private cause of action in tort in favor of an alleged victim. Accordingly, the civil liability of [Steven] must be determined under the applicable provisions of the tort law of this state, not the inapplicable criminal provisions of OCGA § [16-6-3].

(Citations and punctuation omitted.) *Rolleston v. Huie*, 198 Ga. App. 49, 50 (2) (400 SE2d 349) (1990).

OCGA § 51-11-2 provides that

[a]s a general rule no tort can be committed against a person consenting thereto if that consent is free, is not obtained by fraud, and is the action of a sound mind. The consent of a person incapable of consenting, such as a minor, may not affect the rights of any other person having a right of action for the injury.

OCGA § 51-11-2 precludes consent by a minor incapable of giving such consent, but does not preclude consent by a minor capable of consenting. *Wittke v. Horne's Enterprises*, 118 Ga. App. 211, 215, n. 2 (162 SE2d 898) (1968). "A minor acquires capacity to consent to different kinds of invasions and conduct at different stages in his development. Capacity exists when the minor has the ability of the average person to understand and weigh the risks and benefits." (Footnote omitted.) Prosser & Keeton, Torts, § 18, p. 115 (5th ed. 1984). Moreover, decisional and statutory law is replete with examples of situations in which a child over the age of 14 is deemed to have the mental capacity of an adult. See *Redding v. Morris*, 105 Ga. App. 152, 154 (123 SE2d 714) (1961) (" 'A [child] fourteen years of age is presumptively chargeable with the same standard of diligence for his [or her] own safety as an adult.' "); see also OCGA §§ 19-3-2 (2) (16-year-old person can marry; no age limitation if pregnant or parents of child born out of wedlock); 53-4-10 (any individual over 14 years of age can make a will); 53-4-22 (a) (individual over age 14 competent to witness a will); 19-9-3 (a) (14-year-old person has right to select custodial parent in custody battle); 16-3-1 (individual over age 13 is responsible for criminal acts). Accordingly, in tort, A. J. W.'s alleged consent is admissible in the present action against Steven resulting from any consensual conduct between herself and Steven.

Other jurisdictions have similarly viewed the issue of consent between two minors engaging in sexual activity. See *Cynthia M. v. Rodney E.*, 228 Cal.App.3d 1040 (279 Cal. Rptr. 94, 97) (4th Dist. 1991) (Although criminal law does not recognize consent by a person under 18 as a defense, in the civil arena, consent is a defense. "There is no hard-and-fast rule as to the age at which a person attains the

capacity to consent to bodily invasions."); *L. K. v. Reed*, 631 S2d 604, 607 (La. App. 1994) (Minor girl's consent to sexual act with minor boy was admissible in determining comparative fault. To find otherwise, "a girl could provoke a criminal prosecution against a sexual partner and recover damages from him, both as a result of her willful and voluntary actions in consenting to, or instigating, a sexual liaison.") (emphasis omitted); *Michelle T. v. Crozier*, 495 NW2d 327, 329 (Wis. 1993) (despite criminal conviction for second degree sexual assault, evidence in civil case that victim had consented to the touching would defeat civil battery charge). Some courts have handled the issue differently, however, if the victim is a minor and the offender is an adult. See *Doe v. Greenville Hosp. System*, 448 SE2d 564, 566 (S. C. App. 1994) (16-year-old girl could not legally consent to sexual intercourse with an adult whether in criminal or civil context); *Angie M. v. Hiemstra*, 37 Cal.App.4th 1217 (44 Cal. Rptr. 2d 197) (1995) (a civil cause of action for unlawful seduction/sexual abuse can exist against a 48-year-old physician who engages in sexual intercourse and orally copulates with a minor female at least 30 years his junior).

Therefore, Steven's allegation that A. J. W. consented to, and was the instigator of, the sexual acts is relevant and admissible in the present action brought by A. J. W. We must view the evidence and all reasonable inferences therefrom in the light most favorable to plaintiffs, as nonmovants. However, the totality of the evidence must be considered in determining all issues. At trial, the credibility of the witnesses and the weight of the evidence are for the jury. We cannot say that the trial court erred in denying defendants' motion for summary judgment on this issue under the facts of this case.

4. In his final enumeration of error, Steven contends that he, as a minor, cannot be held strictly liable for a violation of OCGA § 51-1-18 because A. J. W. intended to consume the alcohol. OCGA § 51-1-18 is not a strict liability statute. See *Reeves v. Bridges*, 248 Ga. 600, 602-603 (284 SE2d 416) (1981). "The purpose of the statute is to prevent the furnishing of alcoholic beverages to underage children in the absence of parental consent." (Citation and punctuation omitted.) *Eldridge*, supra at 663 (1).

> We have no general rule of strict liability in Georgia. *Ford Motor Co. v. Carter*, 239 Ga. 657 (238 SE2d 361) (1977). Our statutes which have attributes of strict liability are strictly construed, and we will not read strict liability into a statute when the intent of the legislature is not perfectly clear. Also compelling is the fact that the statute which is under consideration here dates back to 1863, long before the advent of any strict liability in Georgia. [This Code section] has been found to be an action for indirect injury to the person and

analogized to actions for such torts as abducting or harboring the wife of another, alienation of affection, adultery or criminal conversation, seduction of a daughter, or gaming with the minor son of another. Under the statute, selling or furnishing liquor to the minor child of another is an intentional tort.

(Citations omitted.) *Reeves*, supra. "Moreover, the damages recoverable under that Code section by a parent may be limited to general and special damages suffered directly by the parent (as opposed to damages the parent may have to pay to a third person)." *Sutter v. Hutchings*, 254 Ga. 194, 199 (2) (327 SE2d 716) (1985).

However, because the cause of action lies with A. J. W.'s parents, her consent and even willingness to drink the alcohol are of no consequence. See *Eldridge*, supra at 663-664 (1). See also OCGA § 51-11-2. The record indicates that Steven intended to provide alcohol to A. J. W. with knowledge that she was a minor. As there is evidence supporting a violation of the statute, the trial court properly denied Steven's motion for summary judgment on this issue.

Accordingly, we find that the trial court correctly denied Steven's motion for summary judgment with respect to the plaintiffs' claims, but that the trial court erred in denying the McNamees' motion for summary judgment.

*Judgment affirmed in part and reversed in part. Barnes, J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED JUNE 11, 1999.

*Chambers, Mabry, McClelland & Brooks, Genevieve L. Frazier, Christopher K. Annunziata*, for appellants.

*Dean, Smith & Therrell, John R. Burdges, Peter R. Roberts*, for appellees.