A09A0035. TIMS et al. v. HASSELBERGER.
(679 SE2d 731)

DOYLE, Judge.

Dolores Hasselberger filed a wrongful death action against Frances Nadine Tims and Michael Anthony Tims after her 16-year-old son, Greg Wade Murray, died after consuming alcohol and methadone pills at a party hosted by the Timses' son while they were out of town.[1] The Timses filed a motion for summary judgment, arguing that there was no evidence of negligence on their part, and the trial court denied the motion. Upon our grant of their application for interlocutory appeal, the Timses appeal the denial of their motion for summary judgment by the trial court. We reverse, for reasons that follow.

---

[9] OCGA § 44-14-470; compare 5 USCS § 8132.

[1] Hasselberger filed suit in her capacity as legal guardian of Murray and as the administratrix of his estate.

A trial court properly grants summary judgment when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.[2] "A de novo standard of review applies to an appeal from a grant or denial of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant."[3]

Construing the facts most favorably to Hasselberger, the evidence shows that the Timses went out of town for the weekend of May 14-15, 2005. Before they left, Mrs. Tims told their 17-year-old son, Justin, that he was not to stay at their home, he was not to invite anyone to their house, and he was not to have any parties at the residence while they were out of town. Justin told his mother that he would stay either with a friend or with his employer; he told his father that he would be spending the night with a friend.

On the evening of May 15, 2005, Justin hosted a party at his parents' home, and Greg attended. During the party, another guest, Adam Pennington, sold Greg three methadone pills for $10. Greg died that night after consuming the methadone pills and alcohol;[4] the medical examiner determined that the cause of his death was methadone toxicity.

Hasselberger filed a wrongful death action against the Timses, and they moved for summary judgment, arguing that there was no evidence of negligence on their part. In response to the motion, Hasselberger submitted the affidavit of Pennington — the individual who supplied the methadone to the boys — stating that on one occasion before May 14, 2005, he saw Justin take a couple of drinks from his father's beer bottle, without objection by Mr. Tims. Pennington also stated that on May 14, 2005, after Mr. Tims told Justin that he was going to be out of town, Justin replied, "Good, now I can throw a party." According to Pennington, Mr. Tims responded, "Just don't get too wild or get the police called out here." Another individual testified by affidavit that he witnessed Justin use marijuana on more than one occasion in the presence of Mrs. Tims prior to May 14, 2005. Hasselberger also submitted evidence that before Greg's death, Justin consumed alcohol, marijuana, and methadone multiple times.

Justin testified at deposition that he first consumed methadone — provided by Pennington, who stole it from another individual — approximately two weeks before the party. Before the May 15, 2005 party, Justin and Greg consumed methadone provided by Penning-

---

[2] See OCGA § 9-11-56 (c); *McNamee v. A. J. W.*, 238 Ga. App. 534, 534 (519 SE2d 298) (1999).

[3] *McNamee*, 238 Ga. App. at 534.

[4] The alcohol was purchased by various guests of the party.

ton on approximately five to ten occasions when they spent the night at Pennington's house; when Justin spent the night at Pennington's home, he lied and told his parents he was staying at Greg's house or with another friend. Justin deposed that he "couldn't move when [he] took the [methadone]," which caused him to "black out," and the drug had the same effect on Greg. There was no evidence submitted that the Timses knew of Justin's methadone use prior to May 14, 2005.

Justin testified that on one occasion, the Timses had to retrieve him from a police station after he and a friend were caught with unopened beer in their vehicle. Justin had also previously been arrested, and he served a week in juvenile detention and was placed on house arrest for six to nine months as a result.[5]

The trial court denied the Timses' summary judgment motion in a single-page order, concluding that "there is a genuine issue as to one or more material facts." This appeal followed.

1. The Timses argue that as a matter of law, under the facts presented, they cannot be held civilly liable for Greg's death. Specifically, the Timses allege that the trial court erred in determining that there was a genuine issue of material fact regarding whether they could have foreseen that Greg would attend a party at their home in their absence and that Greg would voluntarily ingest prescription drugs sold to him by a third party. We agree.

In Georgia, unless superseded by statute,

> parents are not liable in damages for the torts of their minor children merely because of the parent-child relationship; when liability exists it is based on a principal-agent or a master-servant relationship where the negligence of the child is imputed to the parent, or it is based on the negligence of the parent in some factual situation such as allowing the child to have unsupervised control of a dangerous instrumentality. . . .[6]

"Recovery has been permitted where there was some parental negligence in furnishing *or permitting* a child access to an instrumentality with which the child *likely* would injure a third party."[7] But where, as here, "the parent did not *furnish* the dangerous instrumentality but through negligence allowed access thereto to the child, the standard for imposing liability upon a parent . . . is

---

[5] Justin did not recall the crimes with which he was charged, but he testified at deposition that he was "out way past curfew" and was caught walking away from the scene of a burglary.

[6] (Citation and punctuation omitted.) Id. at 535-536 (1).

[7] (Citation and punctuation omitted; emphasis in original.) *Saenz v. Andrus*, 195 Ga. App. 431, 433 (2) (393 SE2d 724) (1990).

whether the parent knew of the child's proclivity or propensity *for the specific dangerous activity*."[8] Absent evidence of such knowledge, the parent cannot be held liable.[9]

In *Manuel v. Koonce*,[10] the defendants' 16-year-old son had a party at their home where they left him when they went out of town for a long weekend. One of the guests who consumed alcohol at the party crashed his truck into a van that night, killing multiple people.[11] The evidence established that the defendants had specifically instructed their son not to have any parties at their home or to "be involved in the use of alcohol" during their absence.[12] There was no evidence that their son had ever consumed alcohol at their home, provided alcohol to others at their home, or hosted a party there where he had provided his friends with alcohol.[13] The defendants had, however, been summoned by the police on a prior occasion after their son was found drinking alcohol.[14] We held that the defendants were entitled to summary judgment because there was no evidence establishing that they knew or should have known that their son had a propensity for making alcohol available to underage guests at their home during their absence.[15] We also noted that although the defendants may have had notice of their son's personal propensity to consume alcohol away from his home, "it did not place them on notice that [he] had any propensity whatsoever to violate their explicit orders and furnish alcohol to others at [their] home."[16]

Here, there was evidence, viewed in the light most favorable to Hasselberger, that the Timses knew that Justin had consumed both alcohol and marijuana prior to May 14, had been arrested for an act of delinquency, and had been caught by the police with unopened beer on one occasion. There was also evidence that Justin specifically told Mr. Tims that he planned to host a party during his parents' absence. However, the Timses did not supply the methadone or the alcohol that Greg ingested, and there was no evidence that the Timses knew that Justin or Greg had ever consumed methadone. More importantly, the Timses had no reason to anticipate that Justin would host a party at their home at which an individual would illegally sell another person methadone or that a third party would

---

[8] (Citation and punctuation omitted; emphasis in original.) Id.

[9] See id.

[10] 206 Ga. App. 582 (425 SE2d 921) (1992), rev'd on other grounds, *Riley v. H & H Operations*, 263 Ga. 652 (436 SE2d 659) (1993).

[11] See id. at 583.

[12] See id. at 583 (1).

[13] See id.

[14] See id. at 583-584 (1).

[15] See id. at 584-585 (1) (b).

[16] Id. at 585 (1) (b).

voluntarily ingest methadone, and thus "they had no duty to guard against it."[17]

"We have previously declined to place a duty on parents to arrange for supervision of their teenagers while [parents] are away from home."[18] Parental liability

> has been limited to such instances where the parent has taken some active part in the creation of the danger. A failure to supervise or regulate the play is not such an active part, because in our society strict control of children is today so rare that its absence is no indication of a lack of reasonable care.[19]

Under the circumstances of this case, the Timses cannot be civilly responsible for Greg's death, and the trial court erred in denying their motion for summary judgment.[20]

2. Given our holding in Division 1, we need not address the Timses' remaining enumeration.

*Judgment reversed. Blackburn, P. J., and Adams, J., concur.*

DECIDED APRIL 24, 2009 —
RECONSIDERATION DENIED JUNE 9, 2009 — ▉▉▉▉▉▉▉

*Gray, Rust, St. Amand, Moffett & Brieske, James T. Brieske*, for appellants.

*Pierce & Dunkelberger, J. Wayne Pierce, Christy A. Dunkelberger*, for appellee.

---

[17] (Citation omitted.) Id. See *Garcia v. Grepling*, 254 Ga. App. 219, 220-221 (561 SE2d 868) (2002) (father's knowledge of son's involvement in two prior schoolyard altercations resulting in school suspension insufficient to charge the father with knowledge of son's propensity to attack another student without provocation); *Stewart v. Harvard*, 239 Ga. App. 388, 396 (4) (a) (520 SE2d 752) (1999) (where parent had no knowledge of his ten-year-old child's predisposition to play with matches or fire, father was not liable for the fire-related death of another child in his home which occurred when he left his child unattended for the day); *McNamee*, 238 Ga. App. at 536; *Jackson v. Moore*, 190 Ga. App. 329, 330 (378 SE2d 726) (1989) (trial court erred in denying summary judgment to a mother who, though aware of her son's juvenile record, including burglary, shoplifting, and conspiracy to commit theft, had no knowledge "of any proclivity or propensity on the part of her son for the specific dangerous activity which allegedly caused [the] plaintiff's injuries").

[18] *McNamee*, 238 Ga. App. at 536 (1).

[19] (Citations omitted.) *Stewart*, 239 Ga. App. at 396 (4) (a).

[20] See *Garcia*, 254 Ga. App. at 220-221; *Stewart*, 239 Ga. App. at 396 (4) (a); *McNamee*, 238 Ga. App. at 536 (1); *Manuel*, 206 Ga. App. at 584-585 (1); *Jackson*, 190 Ga. App. at 330.