A01A1910, A01A1911. ROYAL v. FERRELLGAS, INC. et al.; and vice versa.
(563 SE2d 451)

SMITH, Presiding Judge.

Clara Royal was injured in a flash fire in the kitchen of her employer, a nightclub in Cordele. She brought suit against a propane distributor, Ferrellgas, Inc., and its related companies, Ferrellgas, L.P. and Ferrellgas Partners, L.P. (collectively Ferrellgas), and

---

against Phillips Electric, Inc., a business that sold and installed a propane stove in the kitchen several months before the fire. Ferrellgas and Phillips filed motions for summary judgment. The trial court granted Phillips's motion and granted in part and denied in part that of Ferrellgas. The trial court also granted Ferrellgas's motion in limine excluding evidence of the results of a safety audit it conducted before purchasing the assets of Star Gas Corporation in 1994. In the main appeal, Royal appeals from the grant of summary judgment to Phillips and the grant of Ferrellgas's motion in limine.[1] In the cross-appeal, Ferrellgas appeals from the trial court's denial of those portions of its motion for summary judgment addressing Royal's claims for negligence and failure to warn. In the main appeal, we affirm the grant of summary judgment to Phillips on Royal's claims of negligence and negligence per se, finding that Phillips successfully pierced Royal's allegations with regard to several essential elements of these claims. We also find that the trial court properly granted Ferrellgas's motion in limine, because the evidence sought to be excluded was irrelevant to this action. In the cross-appeal, we reverse the partial denial of summary judgment to Ferrellgas, because Royal failed to show a causal connection between any negligence and her injuries.

The record shows that Phillips sold a gas range to the V.I.P. Club and installed it in July 1996. Phillips's employee removed the old range and connected the new range to one branch of a pipe fitted to a T-joint. In November 1996, Royal was injured in the kitchen fire. The fire was caused by propane that leaked from the other branch of the pipe leading from the T-joint and ignited. At the time of the fire, that branch of the pipe was uncapped, open, and unconnected to any appliance.

1. Royal contends the trial court erred in granting Phillips's motion for summary judgment. She argues that questions of material fact exist with regard to whether Phillips was negligent per se because it violated rules and regulations promulgated under OCGA § 10-1-265 when it installed the new range. She also argues that questions of fact remain with regard to whether Phillips was negligent under common law principles when it installed the stove without inspecting the right branch of the pipe or warning the club owner or the gas supplier of any problem with that branch. It is Royal's contention that Phillips's employees either saw or should have seen the dangerous gas line because it was immediately adjacent to the shut-off valve they used when they turned off the gas to install the new stove. Royal argues that had these employees seen the pipe, they

---

[1] Royal does not appeal from the trial court's grant of partial summary judgment to Ferrellgas.

would have known that it violated the applicable safety code and they immediately would have "red tagged" the entire LP gas system and shut it down until it could be repaired. Phillips, on the other hand, claims its employees did not see the pipe and could not have seen it, because a large deep fat fryer immediately in front of that branch of the pipe obstructed their view of it. Phillips also argues that its employees had no duty to examine the pipe because Phillips is not covered by or required to abide by the regulations in issue.

(a) We first address the issue of negligence per se. Royal maintains that in addition to the visibility of the unsafe pipe to any installer, industry standards and Georgia law required Phillips to check the condition of piping affected by their work. In support of this position, Royal points to the National Fire Protection Association's Fuel Gas Codes, particularly NFPA 54 and 58, which, among other things, prescribe certain duties for installers of appliances.

We do not agree with Phillips that these rules apply only to *purveyors* of gas, and not to sellers and installers of gas appliances such as itself. NFPA 54 states clearly that it is a safety code, applying to installation of "fuel gas utilization equipment." Further, it specifically includes rules for installing food service or commercial cooking equipment, thereby bringing Phillips within its purview. The trial court therefore erred when it ruled that as a matter of law these standards do not apply to Phillips.

But we need not reach Phillips's argument that these are simply privately established standards, which do not establish a statutory duty.[2] For even assuming the standards have the force of law and that Phillips violated them and was negligent per se, we conclude that summary judgment was nevertheless proper. "Negligence per se is not liability per se. Negligence, it should be remembered, is in itself only one of the essential elements prerequisite to a cause of action in a given case." (Citations and punctuation omitted.) *Herrin v. Peeches Neighborhood Grill &c.*, 235 Ga. App. 528, 533 (2) (509 SE2d 103) (1998). It is well established that to recover for injuries caused by another's negligence, a plaintiff must show four elements: "a duty, a breach of that duty, causation and damages." (Footnote omitted.) *Traina Enterprises v. RaceTrac Petroleum*, 241 Ga. App. 18 (525 SE2d 712) (1999). Here, no dispute exists that the fire was caused by gas escaping from an uncapped line, which ignited when the club's owner turned on the gas to use the stove. As detailed in the discussion below, the evidence shows that this line was capped when Phillips

---

[2] We note, nevertheless, that NFPA 54 was adopted in Georgia as part of the Rules and Regulations for Liquefied Petroleum Gases by the State Office of Insurance and Safety Commissioner, under the authority of OCGA § 10-1-265. Rule 120-3-16-.06 provides that NFPA Codes and Standards 54, 58, 59, and 704 are "hereby adopted."

installed the new stove. Royal therefore cannot show the element of causation, and this claim must fail.

(b) Royal also contends material issues of fact exist with regard to whether Phillips was negligent under common law principles in failing to see the uncapped pipe on the right of the T-joint and as to whether the pipe was, in fact, unsafe or uncapped, as alleged by Royal, when Phillips installed the new stove.

> To prevail on motion for summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and the undisputed facts warrant judgment as a matter of law. OCGA § 9-11-56 (c). A defendant may do this by either presenting evidence negating an essential element of the plaintiff's claims or establishing from the record an absence of evidence to support such claims.

*Oglethorpe Dev. Group v. Coleman*, 271 Ga. 173 (1) (516 SE2d 531) (1999).

In addition to finding that Royal "was unable to establish any of the alleged legal duties owed by Phillips to" her, the trial court found that as to Royal's claim of common law negligence, Phillips "discharged its summary judgment burden, and shifted this burden back to [Royal] through its showing . . . that Phillips did not even see the subject gas lines, due to its [sic] concealment behind a large fryer to which the subject line was probably attached." Presumably, this analysis focuses on the elements of duty and breach, finding that because Phillips could not see the gas line, even if a common law duty to inspect it existed, it was not breached. Although not specifically noted by the trial court, Royal presented evidence to the contrary. It is therefore implicit in the trial court's ruling that the court found that the evidence Royal presented that the line was visible was somewhat equivocal and did not suffice to rebut the unequivocal evidence presented by Phillips that it was not. We are constrained to agree with the trial court regarding this evidence.

David "Molly" Nance, a friend of the owner, Bobby Hamilton, was employed at the club.[3] Nance testified on his deposition that he was employed at the club part-time from the time Hamilton opened it. He remembered the deep fryer, which was located next to the stove, but he testified that sometime after the club opened, it was removed and placed outside the building. He was present at the club on the day Phillips delivered and installed the new stove and a new refrigerator, because Hamilton called him and asked him to let Phil-

---

[3] Nance was also Royal's boyfriend.

lips into the club. He was questioned extensively regarding whether anything was placed in the space next to the stove and specifically whether a deep fryer was present. In response to repeated questioning, his answers differed as to whether the fryer was present. In the first colloquy, he was asked whether he "had any recollection" whether any type of fish fryer was present on the day the new stove was installed, to which he replied: "No, I don't think so." His response was clarified:

Q. You don't believe there was?
A. No.
Q. Do you know that to be a fact that there was not or you just don't believe there was?
A. No, it was not.
Q. There was not anything there?
A. No.

This appears to be an unequivocal statement that the fryer was not present next to the stove. But he was asked again:

Q. Do you know for a fact that there was nothing there?
A. I don't recall anything being there.
Q. I don't want to put any words in your mouth about that, but is your testimony that there could have been, but you don't think there was, or are you saying that there definitely was not something there?
A. I can't say, but I just don't think there was nothing [sic] there.

This answer indicates that Nance was not certain; it was simply his belief that the fryer was not present. Although Nance did state once that the fryer was not present, he also stated several times that he simply "believed" or "thought" it was not there. Taking Nance's testimony as a whole, it is apparent that he could not state with certainty whether it was present or not. His testimony alone is insufficiently certain to rebut the testimony of Phillips.

Several other witnesses testified on deposition regarding the fryer. Arthur Lee McLendon, who cooked at the club, testified that he connected the fryer before the club opened and, in fact, connected the old stove and installed the line on the right branch of the T-joint, to hook up the fryer. He agreed that the fryer was removed from the club because it did not work properly. When the fryer was removed, he capped the right branch of the line and sealed it. He then tested

the line for leaks, using a match, and found none.[4] Timmy Felton, who had a car repair business next door to the club, testified on deposition that he saw the fryer "laying out the door" of the club. Neither of these witnesses testified whether or not the fryer was present when the new stove was installed.

Estella Kinchens testified she visited her niece who worked at the club. She testified there was a deep fryer in the kitchen, but she believed it was not to the right of the stove, but to its left. Kinchens described a different-looking fryer than the one described by Nance, and she testified that this fryer was in operation three months before the accident. She also testified that even with that fryer in place, a portion of the gas line behind it was visible.

Hamilton attempted to clear up any discrepancies when he testified on deposition. He remembered another fryer being in the kitchen when the club first opened. This one was a small, portable fryer that operated on a small propane cylinder. He also testified that there was yet another fryer in the kitchen several months before the club closed, which would be after the fire. This fryer was brought in later and positioned in the same space, but it was never connected.

Once Phillips came forward with a prima facie showing that it was entitled to summary judgment because the fryer blocked its view, the burden shifted to Royal to come forward with rebuttal evidence sufficient to show a genuine issue of fact regarding the presence of the fryer. The evidence presented by Royal did not accomplish this. Three different fryers were mentioned by various witnesses. But no witness testified unequivocally that a fryer was not present on the day Phillips delivered and installed the stove. In fact, Nance testified that no other person was at the club when the new stove and refrigerator were delivered and installed, although someone could have come by later. But we need not determine whether Royal's equivocal evidence would serve to rebut the unequivocal evidence presented by Phillips. That is because Phillips also pierced Royal's allegation regarding the element of causation, although that issue was not addressed by the trial court.

Expert opinion was presented showing that the fire was caused when the stove burner's flame ignited gas escaping from the uncapped right branch of the gas line. In an expert's opinion, that line was uncapped when an appliance was removed. This expert testified that in his opinion, the line was "opened" when Hamilton turned the valve on, as he did each time he used the stove. Because Kinchens testified

---

[4] Interestingly, Wayne Rountree, who worked for a local outlet of Ferrellgas's predecessor until October 1994, testified on his deposition that he installed the propane tank at the club and hooked up the "old" stove; that there was a fryer there but it was not hooked up; and that he capped the gas line to the fryer.

that a fryer was operational three months before the fire, it must have been attached to the gas line. Given Hamilton's practice of turning the gas off when no cooking was taking place, the expert opined that the appliance attached to the right branch of the gas line must have been removed recently, leaving the gas line uncapped, sometime between the last time the stove was used and the time of the fire. Royal's own expert acknowledged that the open, uncapped line may not have existed until shortly before the accident. Even if Phillips was negligent, as testified to by Royal's expert, its negligence therefore was not the proximate cause of Royal's injuries, because the fire would not have occurred if the line had not been uncapped shortly before the fire and the gas turned on by Hamilton. The trial court therefore properly granted summary judgment to Phillips on Royal's negligence claim. A trial court's ruling granting summary judgment that is right for any reason must be affirmed. *Costrini v. Hansen Architects*, 247 Ga. App. 136, 138 (1) (543 SE2d 760) (2000).

2. Royal contends the trial court erred in granting Ferrellgas's motion in limine to exclude memoranda generated in anticipation of Ferrellgas's purchase of Star Gas. We do not agree.

Before Ferrellgas purchased the assets of Star Gas, it conducted random safety inspections at Star Gas customer sites as a part of due diligence. The inspections consisted of cursory surveys of the outsides of various customer locations. The memoranda note certain safety concerns but indicate that these concerns should not prevent the purchase of Star Gas. It is undisputed that the V.I.P. Club was not inspected and that the concerns cited in the memoranda were unlike the causes of this fire, which was caused by an open gas line inside the customer location. The trial court found that Royal could not show the similarity required to make the memoranda admissible. We agree with the trial court's finding, and we also find that this material was not relevant to the issues in this case and that its admission would be unduly prejudicial.

In general, a party's conduct with regard to the incident in issue may be proved only by the facts of that incident. In addition to having the potential for prejudicing the jury, a party's previous acts or its general character for carelessness cannot be probative of the issue. *Taylor v. RaceTrac Petroleum*, 238 Ga. App. 761, 762 (519 SE2d 282) (1999) (physical precedent only). Although Royal concedes that the memoranda regarding violations at other locations cannot be used to establish negligence in this case, she insists that the memoranda are admissible to show that Ferrellgas had notice of the danger here. We cannot see how. "Generally, it may be said that it is not permissible, for the purpose of establishing whether a condition at one place is dangerous to show conditions at places other than the one in question." (Citations and punctuation omitted.) *Greene v. Pied-*

*mont Janitorial Svcs.*, 220 Ga. App. 743 (1) (470 SE2d 270) (1996). None of the violations cited in the memoranda involved open or uncapped lines, and even Royal's expert acknowledged that the danger may not even have existed until shortly before the fire.

The issue in this action is whether the defendants were negligent. That must be ascertained from the circumstances surrounding the fire, not by the defendants' reputation or past acts. An exception exists when

> the evidence tends to prove some pertinent fact in the case on trial, such as showing knowledge of the defect claimed or causation, if it rebuts a particular contention regarding how the accident happened or shows that the same dangerous condition existed previously. Even under this exception, the evidence not only must be relevant but must also be examined to ensure that it will not consume too much time, confuse the issues, or present a potential for undue prejudice or unfair surprise.

(Citations omitted.) *Goss v. Total Chipping*, 220 Ga. App. 643, 644 (2) (a) (469 SE2d 855) (1996). Even if this evidence could be admitted under the very limited exceptions to the general rule, contrary to Royal's bare assertion she would be required to prove substantial similarity between the code violations found outside at other locations and the open and uncapped line inside the kitchen at the V.I.P. Club that caused the fire. *Greene*, supra at 744 (1); *Engram v. Sonny Campbell's Gulf*, 200 Ga. App. 40, 42 (3) (406 SE2d 551) (1991). In addition to failing to show that the violations discussed in the memoranda were similar to any at the V.I.P. Club, Royal has presented no evidence showing that the violations at other locations resulted in injuries from explosions or fires or that a causal connection exists between Ferrellgas's alleged negligence at those locations and the fire at the club.

Even if Ferrellgas's conduct in other situations, as evidenced by the memoranda, may have some relevance to the issue of punitive damages, liability for compensatory damages must be established before the issue of punitive damages comes into play. And our Supreme Court has noted that

> the best way to guarantee a fair trial and ensure judicial economy is to continue to give the trial judge discretion on when to admit the evidence of prior and subsequent acts. The general rule is that trial judges may exercise discretion in excluding relevant evidence if its probative value is substantially outweighed by the risk that its admission will con-

fuse the issue, mislead the jury, or create substantial danger of undue prejudice.

(Footnote omitted.) *Webster v. Boyett*, 269 Ga. 191, 195 (1) (496 SE2d 459) (1998). Here, the trial court correctly concluded that under the principles discussed above, the memoranda should not be admitted.

3. Royal's claims against Ferrellgas were brought under theories of negligence (including failure to warn, failure to supply gas detectors, and a host of other duties Royal claimed were breached), negligence per se, strict liability, and breach of implied warranty. The trial court concluded as a matter of law that Royal "was unable to establish" duties on the part of Ferrellgas "to learn of the dangerous propensities of LP gas, in order to inform the consumer," to supply its customers with and install gas detectors, or to warn of the need for such detectors and granted summary judgment to Ferrellgas as to these claims. Summary judgment was also granted as to Royal's claims for breach of implied warranty and strict liability. The court concluded that the remaining legal duties alleged by Royal to have been breached as part of her claim for common law negligence were "supported by adequate legal authority. Furthermore, the breach, causation, and damage elements of the remaining negligence claims present sufficient disputes of material fact which warrant determinations by the trier of fact." Summary judgment was denied as to these negligence claims. Summary judgment was also denied as to Royal's claim of negligence per se. In the cross-appeal, Ferrellgas contends the trial court erred in denying its motion for summary judgment as to the remaining claims.

(a) The remaining negligence claims are based upon Royal's claim that Ferrellgas breached duties to: maintain the tank, gas lines, and gas in reasonably safe condition; warn her or the club of the dangers of LP gas and the tank and lines; properly odorize the LP gas; train its employees about LP gas's characteristics, codes, and laws; inspect the club's tank, gas lines, and appliances to determine their safety; and perform necessary leak and pressure tests.

(i) Although evidence was presented showing that some violations of NFPA standards existed with regard to the tank, no evidence was presented showing that the condition of the tank and lines was involved in any way in causing the fire. Similarly, evidence was presented that no leaks existed in the system at the club, other than the uncapped line. It follows that the element of causation cannot be shown with regard to any breach of the duties to maintain the tank, lines, and appliances in safe condition, to test for leaks, or to train employees regarding standards and laws.

(ii) Royal argues that Ferrellgas had a duty to warn her about the dangerous properties of LP gas. She admitted smelling gas before

the fire, but she did not react to the smell and the smell did not appear to last. Royal's expert testified on deposition that Royal did not smell the gas strongly because propane is heavier than air, and the gas may have stratified at lower levels. The expert also opined that the smell of fish Royal was preparing may have masked the odorant in the gas. Royal argues, therefore, that Ferrellgas had a duty to warn her both about possible stratification and about the masking effect of other odors.

The evidence showed, however, that the club was provided with warning information about these very dangers. Several safety booklets warn customers to smell for gas at floor level because propane is heavier than air and that if gas is smelled, the customer should shut off the gas and all appliances and switches, get outside, and call the supplier from a neighbor's telephone. These booklets also inform customers that on rare occasions, the smell of gas can fade or can be masked by other strong odors. There can be no breach of a duty to warn when the warning was actually given, but Royal's employer did not pass on the warning or Royal herself failed to heed it. See generally *Powell v. Harsco Corp.*, 209 Ga. App. 348, 349-350 (2) (433 SE2d 608) (1993) (alleged inadequacy of instructions cannot be proximate cause of injury when instructions provided but not read).

In addition, Royal testified on her deposition that she knew that smelling even a slight odor of gas could indicate that a leak existed and that propane was flammable. She also knew that cooking odors could mask other odors and that if she smelled gas, she should leave the building. Hamilton also acknowledged that he was aware that propane can pool at low levels and can sometimes be undetectable by smell. All the information Royal alleges that Ferrellgas should have conveyed to her was therefore known by her and her employer. When the injured party is aware of the danger, failure to warn of that danger cannot be the proximate cause of the injury. *Bodymasters Sports Indus. v. Wimberley*, 232 Ga. App. 170, 174-175 (2) (501 SE2d 556) (1998). Because proximate cause is an essential element of a claim for negligence and Ferrellgas has pierced that element of Royal's claim, the trial court erred in denying Ferrellgas's motion for summary judgment on the remaining negligence claims notwithstanding that some issues of fact may remain.

(b) The trial court correctly concluded that Ferrellgas, as an installer and operator of equipment for storing, handling, transporting, and using LP gas, is subject to the rules and regulations promulgated under OCGA § 10-1-265. According to Royal's expert, three code violations existed outside the club: an improper heater vent; an inadequately secured propane line; and the absence of a protective sleeve where the gas line pierced the wall of the building. To prevail on her claim of negligence per se, Royal must show a causal relation-

ship between these violations of Ferrellgas's statutory duty and the injuries she sustained. *Val D'Aosta Co. v. Cross*, 241 Ga. App. 583, 585 (526 SE2d 580) (1999). But it is undisputed that none of these violations was the proximate cause of the leak inside the club that caused the accident.

Royal argues, however, that had Ferrellgas discovered and repaired these outside violations, it would have been required to shut down the system and would have been forced to conduct an inspection, which would have revealed certain problems inside the kitchen. But it is also undisputed that even the problems cited by Royal inside the kitchen — improper nuts, an improper valve, and a bend in the gas line — were not the cause of the fire. None of these ever leaked gas; the accident was caused by gas flowing from the uncapped, open gas line to the right of the T-joint, which was ignited by a stove burner. No evidence was presented showing that Ferrellgas had any knowledge of an open line or that it could have discovered such an open line. The last time a Ferrellgas employee was inside the kitchen was almost two years before the accident, and the line was capped at that time. Repairing these problems, therefore, would not have prevented the fire or the injuries to Royal. Because Royal cannot show a causal connection between any violation of Ferrellgas's statutory duty and her injuries, the trial court should have granted summary judgment to Ferrellgas on Royal's claim of negligence per se.

*Judgment affirmed in Case No. A01A1910. Judgment reversed in Case No. A01A1911. Barnes and Phipps, JJ., concur.*

DECIDED MARCH 12, 2002 —
RECONSIDERATION DENIED APRIL 3, 2002 — 

*James W. Hurt*, for appellant.

*Love, Willingham, Peters, Gilleland & Monyak, Allen S. Willingham, Wesley C. Taulbee, Gardner, Willis, Sweat & Goldsmith, Donald A. Sweat*, for appellees.