## A03A1437. STANDARD et al. v. HOBBS.
(589 SE2d 634)

SMITH, Chief Judge.

Dianne Standard brought suit against a McDuffie County sheriff's deputy to recover damages for personal injuries she and her daughter sustained as a result of a collision between the car she was driving and a car driven by Clinton Hoyt Braswell. At the time of the collision, the deputy was pursuing Braswell at high speeds.[1] The trial

---

[1] Standard sued on her own behalf and that of her minor daughter, Allison Whitfield. Standard's husband, Darrell Standard, sought damages for loss of consortium. Also named as defendants were Braswell and his mother, who owned the car Braswell was driving. Braswell's mother's motion for summary judgment is pending in the trial court. Braswell, who is in prison, is not actively participating in this appeal.

court granted summary judgment to the officer, Michael Hobbs, finding that Hobbs's actions were discretionary rather than ministerial, that the county's waiver of sovereign immunity through the purchase of insurance for its vehicles did not apply here, and that proximate cause had not been shown because Standard had not established that the officer acted with reckless disregard for her safety. Standard challenges all three findings. We agree with Standard that the trial court erred in finding that the county's waiver of sovereign immunity did not apply in this case. But because the trial court correctly found that Hobbs's actions were discretionary and that Standard did not show that Hobbs acted with reckless disregard, we affirm the grant of summary judgment to Hobbs.

Construed in the light most favorable to Standard as the respondent on the motion for summary judgment, the evidence in the record shows that Braswell was wanted for several armed robberies in Richmond County and was believed to be armed and dangerous. Law enforcement officers from various jurisdictions were involved in the pursuit of Braswell. Jefferson County Investigator Robert Chalker, who was in an unmarked car, first spotted Braswell's car and began following it on Interstate 20. Hobbs was notified about Braswell by his dispatcher. After Braswell exited the interstate onto Highway 17, Hobbs fell in directly behind Braswell's car, and Georgia Bureau of Investigation Special Agent David Rush began following Chalker to assist. When Braswell's car reached a section of road with wide shoulders, Hobbs "thought that would be a good place to try to get him pulled over." He notified the dispatcher and activated the blue lights on his patrol car, but Braswell kept going. At that point, "the traffic was real thick" and Braswell "wasn't running. He just wasn't pulling over." But when Braswell turned onto Highway 43 with the officers in pursuit, the traffic became lighter. The road was not "very heavily traveled," and Braswell "started speeding as though he were trying to run away." McDuffie County Sheriff Logan Marshall monitored the pursuit over the radio and spoke to Hobbs several times, and a State Patrol helicopter was dispatched to monitor the pursuit and advise the officers on the ground. The pilot spotted only one other car on the road during the pursuit.

Braswell was driving at very high speeds, and the officers were attempting to keep up with him. Agent Rush estimated that at times he was "running probably 120." In the interest of safety, the officers slowed at intersections and stop signs even though Braswell did not, causing them to lose ground at times. Adding difficulty to the pursuit, the road they were traveling on was "just super crooked. It goes around and crooks around, and is just as crooked as a snake's back." The officers had their lights on and their sirens blaring to warn the public of the danger. During the chase, officers made attempts to stop

Braswell in various ways, without success. When Hobbs noted that Braswell had blown his right front tire and "was on the rim on the right front," he felt that they were "getting close to the end now."

Shortly thereafter, the helicopter pilot advised the pursuing officers to proceed with caution because a vehicle was approaching at the next intersection. Braswell had already passed through the intersection, but Hobbs, who was leading the pursuit, slowed down "almost to a complete stop." When he resumed speed, he saw Braswell disappear around a "pretty hard curve" and heard the helicopter pilot report a wreck. Upon reaching the scene, he saw that Braswell had collided with the Standard vehicle as it proceeded out of the Standards' driveway and onto the road. Braswell's car was across a ditch on the left side of the road; the Standard car was parallel with the ditch and "straddling" it. Gasoline had spilled, and the officers pulled Braswell away from his car because "there was some smoke . . . some gasoline had spilled and . . . there was some fear that there may be a fire." Braswell's leg appeared to be broken, and Hobbs and Rush secured him until he could be attended by EMS personnel. Standard and her daughter sustained multiple serious injuries.

1. Standard contends that the trial court erred in ruling that Hobbs's decision to continue the high speed pursuit was a discretionary act. She argues that written departmental policy "mandated" that Hobbs end the pursuit, making it a ministerial duty, which Hobbs violated. We do not agree.

A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty. A discretionary act, however, calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed.

(Citation omitted.) *Phillips v. Walls*, 242 Ga. App. 309, 311 (1) (529 SE2d 626) (2000).

The doctrine of official immunity, also known as qualified immunity, offers public officers and employees limited protection from suit in their personal capacity. Qualified immunity protects individual public agents from personal liability for discretionary actions taken within the scope of their official authority, and done without wilfulness, malice, or corruption. Under Georgia law, a public officer or employee may be personally liable only for ministerial acts negligently performed or acts performed with malice or an intent to

injure. The rationale for this immunity is to preserve the public employee's independence of action without fear of lawsuits and to prevent a review of his or her judgment in hindsight. *This protection is particularly important in the context of a high speed pursuit where police officers must make a split-second decision on whether to initiate the pursuit or continue it and the type of risks to take.*

(Punctuation and footnotes omitted; emphasis supplied.) *Cameron v. Lang,* 274 Ga. 122, 123 (1) (549 SE2d 341) (2001).

In *Cameron,* our Supreme Court consolidated two cases in which police officers were engaged in high speed chases of persons suspected of car theft. The court held that the officers "were exercising their discretion" and were entitled to qualified immunity. Id. at 125-126 (2). In one case, in fact, during the chase a Savannah police officer ran a stop sign without activating his lights or siren. The Supreme Court held that this act did "not change his decision to engage in a high speed pursuit into a ministerial act, but merely raise[d] a question of fact concerning whether he drove with due regard for the public's safety." (Footnote omitted.) Id. at 125.

Standard correctly notes that our courts have held in certain cases that when "a governmental department creates its own policy requiring certain actions under certain situations, then the actors for that department have a ministerial duty to follow the policy. Obedience of the departmental policy is ministerial." See, e.g., *Happoldt v. Kutscher,* 256 Ga. App. 96, 98 (567 SE2d 380) (2002) (county ordinance requires county's subdivision review officer to perform ministerial duty of inspecting subdivision construction sites to ensure compliance with requirements of ordinance); *Wanless v. Tatum,* 244 Ga. App. 882, 884 (536 SE2d 308) (2000) (employee county engineer had ministerial duty to obey county policy requiring the investigation of complaints regarding county roads); *Phillips,* supra, 242 Ga. App. at 312 (1) (a) (actions of road crews in carrying out directions regarding inspection and maintenance are ministerial); *Lincoln County v. Edmond,* 231 Ga. App. 871, 874 (2) (501 SE2d 38) (1998) (because county policy dictated that tree blocking county road must be removed, time and manner of doing so are ministerial acts). As Standard also points out, however, "[t]he decision whether acts are ministerial or discretionary is determined by the facts of the particular case. [Cit.]" *Keener v. Kimble,* 170 Ga. App. 674, 675 (2) (317 SE2d 900) (1984). Here, neither the policy nor the act in issue is comparable to those in the cases cited by Standard.

At the time of this occurrence, the McDuffie County Sheriff's Department did have a written standard operating procedure governing high speed pursuit. The document cautions officers "to avoid

contributing to the danger already created by the violating motorist," not to duplicate a fleeing suspect's unnecessary risks, and various other cautions, all of which Standard claims were ministerial duties that Hobbs violated. Standard also claims that under subsection (e) of the portion of the directive governing "termination of pursuit," an officer is required to terminate a high speed pursuit if "[a]dditional information is obtained that would allow for the later apprehension of the violator." She asserts that Hobbs violated his ministerial duty to do so when he continued the pursuit after the helicopter was dispatched because he knew that the helicopter was overhead and capable of tracking the fleeing car.

We do not agree with Standard's characterization of the duties created by the directive. Unlike the policies and ordinances in the cases cited by Standard, this document contains guidelines and boundaries, prohibiting certain acts but clearly placing responsibility for the decisions inherent in high speed chases with individual officers. The opening sentences of the directive provide: "The responsibility for the decision to pursue a suspected violator and the methods to be employed rest solely with the individual officer. In arriving at this decision, an officer must carefully consider all factors involved, all possible consequences, and the safety of citizens whose protection is the major objective." This balancing process is the hallmark of discretionary action. The officer is required to weigh competing factors, deliberate, and make a choice regarding a course of action. The written policy aids the officer in this process by providing standards by which the officer should be guided in exercising his or her discretion.

Hobbs testified on his deposition that he

> weighed it in my mind from the whole time after he started running, but the fact that he was wanted for armed robbery, and if I didn't try everything I could to . . . get my hands on him, that he may get up there and I didn't know what he would do to those people up there, and I didn't want nobody up there to get hurt. And the fact of him running from me and doing like he was doing indicated to me that it didn't matter to him what he done as long as he could get away, and if that meant going to somebody's house and taking what they had and doing whatever he had to do to take it, you know, that's something you got to think about, too.

His actions, including slowing at intersections and stop signs, even though it meant temporarily losing sight of Braswell, support his statement that he did, indeed, think about the safety of the public.

Further, our courts have held in similar fact situations that pursuing officers' actions were discretionary in nature. See, e.g., *Cameron*, supra, 274 Ga. at 125 (officers exercising discretion when engaged in high speed pursuits); *Morgan v. Barnes*, 221 Ga. App. 653, 654-655 (472 SE2d 480) (1996) (officer responding to emergency when collision with uninvolved third party occurred; officer performing discretionary act). Both the evidence presented and the case law therefore support our conclusion that Hobbs's acts were discretionary rather than ministerial. Given that no evidence in the record suggests that Hobbs acted with actual malice or an intent to injure, the trial court properly ruled that Hobbs was entitled to official, or qualified, immunity.

2. Standard maintains that the trial court also erred by ruling that the waiver of sovereign immunity applicable to insured government vehicles did not apply here. Sovereign, or governmental, immunity protects governmental bodies from legal action. Under OCGA § 33-24-51, however, counties have the option of purchasing liability insurance on county-owned vehicles, thereby waiving governmental immunity as to damages arising from the use of these vehicles. It is undisputed that Hobbs's vehicle was covered by liability insurance. The trial court ruled that because Standard had not named the sheriff or the county as defendants, no waiver occurred. The State concedes, and we agree, that waiver does not depend upon whether the county was named as a defendant. Hobbs was sued in his official capacity, and "[s]uits against public employees in their official capacities are in reality suits against the state and, therefore, involve sovereign immunity." (Punctuation and footnote omitted.) *Soley v. Dodson*, 256 Ga. App. 770, 772 (569 SE2d 870) (2002). Because the sheriff's department vehicles were covered by liability insurance, sovereign immunity was waived for purposes of Standard's suit against Hobbs. We must consider, therefore, the elements of Standard's negligence claim against Hobbs, particularly whether Hobbs's actions were the cause of Standard's injuries.

3. Standard alleges that the trial court erred in finding that Hobbs did not act with reckless disregard and was not the proximate cause of the collision between Braswell and Standard. We do not agree.

Proximate cause is an essential element of a negligence claim. *Post Properties v. Doe*, 230 Ga. App. 34, 39 (495 SE2d 573) (1997). Under OCGA § 40-6-6 (d) (2), Hobbs's actions may constitute the proximate cause of Standard's injuries only if he showed reckless disregard for proper law enforcement procedure. The statute was amended after the decision in *Mixon v. City of Warner Robins*, 264 Ga. 385 (444 SE2d 761) (1994). *Pearson v. City of Atlanta*, 231 Ga.

App. 96, 97 (1) (499 SE2d 89) (1998). The amended statute provides that

> [w]hen a law enforcement officer in a law enforcement vehicle is pursuing a fleeing suspect in another vehicle and the fleeing suspect damages any property or injures or kills any person during the pursuit, the law enforcement officer's pursuit shall not be the proximate cause or a contributing proximate cause of the damage, injury, or death caused by the fleeing suspect unless the law enforcement officer acted with reckless disregard for proper law enforcement procedures in the officer's decision to initiate or continue the pursuit. Where such reckless disregard exists, the pursuit may be found to constitute a proximate cause of the damage, injury, or death caused by the fleeing suspect, but the existence of such reckless disregard shall not in and of itself establish causation.

It is apparent that OCGA § 40-6-6 (d) expressly addresses the situation posed by the facts of this case. Applying the statute to similar, if not more egregious facts (high speed chase conducted in midtown Atlanta during rush hour), we held in *Pearson*, supra, 231 Ga. App. 96, that the pursuing officer's conduct did not rise to the level of "reckless disregard." Id. at 98-99 (2).

Here, Hobbs's superior, Sheriff Logan Marshall, who "created and implemented" the McDuffie County Sheriff's Department written policy and had "thirty years of law enforcement experience," gave an affidavit in which he stated that he was "intimately familiar with proper law enforcement procedures in conducting a vehicular pursuit of a suspected criminal." Marshall spoke with Hobbs "several times" during the chase and monitored it over police radio. Marshall did not order Hobbs to terminate the pursuit because he believed the pursuit was "necessary under the circumstances." According to Marshall, Hobbs "complied with the McDuffie County Sheriff's Department pursuit policy and standard law enforcement procedures in connection with the pursuit of Clinton Braswell." It was Marshall's opinion that Hobbs "fully complied with [his] duties under applicable policy and procedures" and that Hobbs "at no time" acted in reckless disregard of either McDuffie County Sheriff's Department policy or "standard law enforcement procedures."

> To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant

judgment as a matter of law. A defendant may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case.

(Citation and emphasis omitted.) *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

Marshall's affidavit negated Standard's allegation that Hobbs acted in reckless disregard of proper law enforcement procedure and that his actions were at least a contributing cause of her injuries. Once Hobbs came forward with this evidence, the burden shifted to Standard. To avoid summary judgment against her, Standard was required to come forward with rebuttal evidence sufficient to show that a genuine issue of fact existed with regard to whether Hobbs acted in reckless disregard of proper procedure. See *Royal v. Ferrellgas, Inc.*, 254 Ga. App. 696, 701 (563 SE2d 451) (2002). Because she did not do so, Hobbs could not be held liable on Standard's negligence claim. It follows that although the trial court erred in ruling that sovereign immunity was not waived, summary judgment was nevertheless proper in favor of Hobbs on Standard's negligence claim. A summary judgment right for any reason will be affirmed. *Hot Shot Express v. Assicurazioni Generali*, 252 Ga. App. 372, 373 (556 SE2d 475) (2001).

*Judgment affirmed. Ruffin, P. J., and Miller, J., concur.*

DECIDED NOVEMBER 4, 2003.

Cook, Noell, Tolley, Bates & Michael, Edward D. Tolley, Robert C. Irwin III, for appellants.

Cruser & Mitchell, William T. Mitchell, Deana Simon-Johnson, Tucker, Everitt, Long, Brewton & Lanier, Benjamin H. Brewton, for appellee.