A11A1001. BURROUGHS et al. v. MITCHELL COUNTY et al.
(720 SE2d 335)

BARNES, Presiding Judge.

Randolph Burroughs slipped and fell while disposing of trash at a county sanitation facility, sustaining serious injuries. He sued two Mitchell County employees and the county itself, contending that the facility was improperly designed and built. He also sued Seminole Sanitation Services, Inc., the company that serviced the dumpsters, contending that it contributed to his injury because its employees had bent the facility's landing and placed the dumpster several feet from the edge of the landing where he fell. All of the defendants moved for summary judgment, which the trial court granted without explanation.

Burroughs appeals the grant of summary judgment to Seminole Sanitation and to the county employees individually on official immunity grounds. For the reasons that follow, we affirm the trial court's grant of summary judgment to the county employees, and affirm in part and vacate in part the grant of summary judgment to Seminole Sanitation.[1]

On appeal, we review the trial court's grant of summary judg-

---

[1] While Burroughs also sued the two county employees in their official capacities, he has not argued that the trial court erred in granting them summary judgment in that capacity, nor has he appealed the trial court's grant of summary judgment to Mitchell County. Thus, those rulings stand affirmed.

ment de novo to determine whether the evidence demonstrates a genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Ford v. Bank of America Corp.*, 277 Ga. App. 708 (627 SE2d 376) (2006). Although Burroughs, as the respondent, is entitled to all reasonable inferences from the evidence presented, such inferences cannot be based upon mere conjecture or possibility. *Sharfuddin v. Drug Emporium*, 230 Ga. App. 679, 683 (3) (a) (498 SE2d 748) (1998).

So viewed, the evidence shows that the county leased the land on which the sanitation facility was located. County employees designed and built the facility, and the county maintained it. Seminole Sanitation replaced the full dumpsters with empty ones, which was the only service it performed at the facility.

Burroughs had never been to the facility before, which is set up so that residents can pull off the road, park their vehicles, walk out onto a platform, and dump their trash into large dumpsters. The tops of the dumpsters are approximately level with the platform. Burroughs said that when he walked out onto the platform, the edge of the dumpster was four or five feet from the edge of the platform. As he began to dump the trash from the can, he slipped off the side and fell head-first to the ground. While Burroughs testified he was dumping his second can of trash when he fell, his son testified that Burroughs only took one can of trash from the son's house.

When asked if anything caused him to fall, Burroughs responded that he could not remember, adding, "I just slipped, that's all," although he denied that the surface was slippery. When asked if Burroughs was confused when he arrived at the hospital, his son said Burroughs "knew what he was saying." Burroughs testified that after he fell to the ground, he stood up but "couldn't get out from down there, down there right where [he] fell," so he waited there until his son came and led him out. Burroughs was taken to the emergency room and then transferred to a different hospital, where he required surgery to relieve pressure caused by a brain hemorrhage. Two or three hours later he underwent a second surgical procedure to relieve the pressure. Burroughs remained in the hospital for two months, and continues to experience personality and cognitive problems.

1. Burroughs argues that the trial court erred in granting summary judgment to the two county employees, Administrator Bennett Adams, who decided to build the facility, and Road Superintendent Julius Hatcher, who is in charge of the Public Works Department, which oversees the facility maintenance. Burroughs contends that the two employees are not entitled to official immunity because they negligently performed their ministerial duty to put guardrails on the platform from which the trash was tossed into the dumpster. The defendants respond that, among other things, the

building code in effect when the structure was built did not require guardrails in this application, and that their decision not to put them around the platform was a discretionary one for which they are immune from suit.

The doctrine of official immunity, also known as qualified immunity, affords limited protection to public officers and employees for discretionary actions taken within the scope of their official authority, and done without wilfulness, malice or corruption. *Teston v. Collins*, 217 Ga. App. 829, 830 (1) (459 SE2d 452) (1995).

> [A] public officer or employee may be personally liable only for ministerial acts negligently performed or acts performed with malice or an intent to injure. The rationale for this immunity is to preserve the public employee's independence of action without fear of lawsuits and to prevent a review of his or her judgment in hindsight.

(Footnotes omitted.) *Cameron v. Lang*, 274 Ga. 122, 123 (1) (549 SE2d 341) (2001). As there is no evidence in this case that Adams or Hatcher acted or failed to act with malice, wilfulness, or an intent to injure, the question is whether the officials' failure to install a guardrail was a ministerial or discretionary act.

Unlike a ministerial act, a discretionary act "calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed." (Citation and footnote omitted.) *Harvey v. Nichols*, 260 Ga. App. 187, 191 (1) (581 SE2d 272) (2003).

> A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty. A discretionary act, however, calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed.

(Citation omitted.) *McDowell v. Smith*, 285 Ga. 592, 593 (678 SE2d 922) (2009). Whether the act of a public official is ministerial or discretionary is determined by the facts of each case, "particularly the facts specifically relevant to the official's act or omission from which the alleged liability arises." *Grammens v. Dollar*, 287 Ga. 618, 620 (697 SE2d 775) (2010).

Burroughs argues that because a provision of the applicable building code required the installation of guardrails on the platform

at the sanitation facility, this building requirement was ministerial, not discretionary, and thus, the county employees were not entitled to official immunity for failing to install them.

The sanitation facility was built in 1995 by Harry Daughtry, the former road supervisor. While Adams initiated the project, Daughtry designed and built it. It was one of the first built, and Adams testified that its design was dictated in part by the amount of land available to the county. County facilities built afterward used a different design because more space was available.

When the sanitation facility was designed and built, the applicable state minimum standard code for constructing buildings and structures was the Standard Building Code ("SBC"). OCGA § 8-2-20 (9) (A) (i) (I) (1995).[2] The county defendants asked the trial court to take judicial notice of the SBC, portions of which are included in the record. Burroughs' expert architect testified that the SBC required the installation of guardrails on elevated platforms such as the one from which Burroughs fell. The code section upon which the expert relied provides: "All unenclosed floor and roof openings, open and glazed sides of landings and ramps, balconies or porches which are more than 30 inches (762 mm) above finished ground level or a floor below shall be protected by a guardrail." SBC § 1116. Although this guardrail requirement is contained within a chapter describing the features required for "means of egress . . . to the exterior of a building," SBC § 1101.1.2, and the sanitation facility is not a "building," Burroughs' expert opined that the requirement was applicable to the sanitation facility because the SBC also applied to "every . . . structure," as stated in SBC § 101.3. Whether the SBC provision applies to the situation in this case, however, is a legal conclusion. *Connell v. Long*, 248 Ga. 716, 718 (1) (286 SE2d 287) (1982) (whether zoning ordinance applies to property is a legal question for trial court, not jury, to decide). While "[t]he opinion of an expert is admissible when the expert is asked to make an inference of fact from data presented to him," *Lawhorne v. Soltis*, 259 Ga. 502, 504 (2) (384 SE2d 662) (1989), legal conclusions "cannot be considered as evidence on motion for summary judgment." *GE Capital Mtg. Svcs. v. Clack*, 271 Ga. 82, 84 (1) (b) (515 SE2d 619) (1999).

"[T]he execution of a specific task is characterized as ministerial even though the manner in which it is accomplished is left to the employee's discretion." (Punctuation and footnote omitted.) *Heller v. City of Atlanta*, 290 Ga. App. 345, 348 (659 SE2d 617) (2008)

---

[2] After July 1, 2004, the state minimum standard code included the International Building Code instead of the Standard Building Code. OCGA § 8-2-20 (9) (B) (i) (I) (2010).

(statute mandated minimum taxi tire tread depth; thus, city vehicle inspector's failure to inspect depth was violation of ministerial duty). In this case, however, the guardrail requirements of SBC § 1116 do not define specific ministerial tasks applicable to this sanitation facility, because the facility is not a "building." The SBC defines "building" as "any structure that encloses a space used for sheltering any occupancy." SBC § 202. Section 1101.1 of the SBC states that the provisions of Chapter 11 apply to "every building hereafter erected." Section 1101.1.2 directs that "[m]eans of egress shall consist of continuous and unobstructed paths of travel to the exterior of building. Means of egress shall not be permitted through kitchens, closets, restrooms and similar areas nor through adjacent tenant spaces." Finally, in defining its scope, the SBC itself provides that "where there is a conflict between a general requirement and a specific requirement, the specific requirement shall be applicable." SBC § 101.3.1. Therefore, the "means of egress" provisions apply to buildings, not to both buildings and structures, as the expert opined.

The sanitation facility is not a building, and the platform from which trash was thrown was not a "means of egress." Thus, the guardrail requirements of SBC § 1116 do not apply in this situation. Burroughs has pointed to no other applicable source defining the installations of guardrails as a ministerial duty. "Absent such applicable standards, plaintiffs cannot establish that the defendants' actions were ministerial — namely, that the procedures or instructions were so clear, definite and certain as merely to require the execution of a relatively simple, specific duty." (Citation and punctuation omitted.) *Banks v. Happoldt*, 271 Ga. App. 146, 150 (2) (608 SE2d 741) (2004). Accordingly, Burroughs has not established that the failure to install guardrails violated a ministerial duty that waived the official immunity to which Adams and Hatcher are entitled.

Burroughs also asserts that inspection and maintenance of the landing was a ministerial duty, as was supervising the employees who performed that duty. "[O]ur courts have held in certain cases that when a governmental department creates its own policy requiring certain actions under certain situations, then the actors for that department have a ministerial duty to follow the policy. Obedience of the departmental policy is ministerial." (Citations and punctuation omitted.) *Standard v. Hobbs*, 263 Ga. App. 873, 876 (1) (589 SE2d 634) (2003). In this case, however, Burroughs has not established the existence of a departmental policy creating a ministerial task applicable to this case. Road Supervisor Hatcher was not employed by the county when the sanitation facility was built, but when he came to work for the county in 2000, he directed the addition of barriers in the parking lot. The facility was designed for residents to dump

household garbage, and the barriers were placed to discourage people from backing pickup trucks to the edge of the dumpsters and offloading used building materials directly into the containers. In adding the barriers, he testified, he followed no "[c]ounty policy or directive, nor any codes or standards which dictated the manner, method or timing" of the installation, but instead used his discretion to allocate resources to the project. Absent evidence of a ministerial department policy, the trial court did not err in granting summary judgment to Adams and Hatcher on Burroughs' claims against them in their individual capacities.

2. Burroughs also argues that the trial court erred in granting summary judgment to Seminole Sanitation, contending that factual issues remain for a jury to determine.

Burroughs' claim against Seminole Sanitation is not a premises liability claim under OCGA § 51-3-1, which imposes upon an owner or occupier of land the nondelegable duty to exercise ordinary care to keep the premises and approaches safe for invitees. Seminole Sanitation neither owned nor occupied the facility where Burroughs fell, but simply serviced the dumpsters. "[T]o recover for injuries caused by another's negligence, a plaintiff must show four elements: a duty, a breach of that duty, causation and damages." (Citation and punctuation omitted.) *Royal v. Ferrellgas*, 254 Ga. App. 696, 698 (1) (a) (563 SE2d 451) (2002). Here, Burroughs had two complaints against Seminole Sanitation: first, that Seminole Sanitation placed the edge of the dumpster four or five feet from the edge of the platform, unreasonably increasing the likelihood someone tossing trash would lose his balance and fall, and second, that Seminole Sanitation bent the landing, made it uneven, and caused a tripping hazard.

(a) As to the gap between the dumpster and platform, "[o]n the issue of causation, a plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough." (Punctuation and footnote omitted.) *Gay v. Redland Baptist Church*, 288 Ga. App. 28, 29 (653 SE2d 779) (2007). Here, while both of the county employees and Seminole Sanitation's president testified that the dumpsters should be placed almost flush with the platform because a person reaching to toss garbage across a big gap is more likely to fall, Burroughs presented no evidence that a gap caused him to fall.

When asked what made him fall, Burroughs could only say that he did not know, but guessed that he "just slipped," "just went on over," or "lost his balance and footing." A de novo review of the deposition and exhibits where Burroughs marked the location of his fall reveals that he did not fall into the gap between the dumpster

and platform, but fell off the side of the platform, perpendicular to the dumpster. The evidence thus forms no reasonable basis for the conclusion that any gap between the platform and dumpster more likely than not caused Burroughs to fall. Accordingly, the trial court did not err in granting summary judgment to Seminole Sanitation on Burroughs' claim that Seminole Sanitation negligently left such a gap and that this gap caused his injuries.

(b) As to Burroughs' claim that Seminole Sanitation bent the landing and caused a tripping hazard, the evidence showed that the edge of the platform was "slightly bent," and the county employees admitted that the landing should have been level. In response to Seminole Sanitation's motion for summary judgment, Burroughs submitted the affidavit of an expert witness, who explained that after personally inspecting the platform and reviewing other evidence in the case, he concluded that Seminole Sanitation probably caused the damage to the platform. Contending that this opinion is unreliable and, therefore, inadmissible, Seminole Sanitation moved to exclude it under OCGA § 24-9-67.1, but the trial court never ruled on its admissibility.

Before this court considers the issue, the trial court should consider and rule on the admissibility of the expert opinion first. The admissibility of the expert opinion under OCGA § 24-9-67.1

> requires a consideration of the facts and data upon which the opinion is based, whether the opinion is a product of reliable principles and methods, and whether the opinion was reached by a reliable application of those principles and methods to the facts of the case.

(Punctuation omitted.) *An v. Active Pest Control South*, 313 Ga. App. 110 (720 SE2d 222) (2011). "[T]he trial judge acts as the gatekeeper in determining the admissibility of expert opinion," *Condra v. Atlanta Orthopaedic Group*, 285 Ga. 667, 671 (1) (681 SE2d 152) (2009), and the appellate court reviews that determination for abuse of discretion. See *Brady v. Elevator Specialists*, 287 Ga. App. 304, 305 (1) (653 SE2d 59) (2007).

Accordingly, we vacate the award of summary judgment to Seminole Sanitation on Burroughs' claim that Seminole Sanitation negligently damaged the platform, created a tripping hazard, and caused his injuries, and remand this case for the trial court to rule on the motion to exclude the expert opinion, and then reconsider Seminole Sanitation's motion for summary judgment on this claim.

*Judgment affirmed in part and vacated in part, and case remanded. Adams and Blackwell, JJ., concur.*

DECIDED NOVEMBER 29, 2011.

*Law & Moran, Peter A. Law, Ernest M. Moran, Silvis, Ambrose & Lindquist, Benjamin L. Lindquist*, for appellants.

*Dennis, Corry, Porter & Smith, Grant B. Smith, George H. Connell, Jr., Brown, Readdick, Bumgartner, Carter, Strickland & Watkins, Richard K. Strickland, Freeman, Mathis & Gary, Sun S. Choy, Jacob E. Daly*, for appellees.